[No. D012311. Fourth Dist., Div. One. Mar. 22, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS FERNANDO AGUILAR, Defendant and Appellant.

**COUNSEL**

Teri D. Pate, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Steven H. Zeigen and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HUFFMAN, Acting P. J.**—After the trial court denied his motion to suppress evidence (Pen. Code,[1] § 1538.5) produced as a result of an

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

impoundment inventory search of his car, Luis Fernando Aguilar (Aguilar) pleaded guilty to one count of possessing stolen property (§ 496). The court suspended imposition of sentence and granted him two years' probation. He appeals, contending the court erred in denying his motion to suppress. We agree and therefore reverse the judgment.

BACKGROUND

The following facts are taken from the transcript of the preliminary hearing.

About 8:30 on a November evening, Officer Duran was patrolling Calipatria in Imperial County. He noticed four people carrying something which he thought was a television set. A television set had been reported stolen a few days earlier, and he thought the people were carrying that set. He saw something being put into the trunk of an older model Chevrolet, and two people get into the car and drive off. He followed the car.

The driver of the car stopped at an intersection beyond the limit line and made a right turn without signalling. Duran stopped the car and asked the driver, Aguilar, for his license and registration. Aguilar did not produce a license. Duran ran his name through a computer and discovered his license was suspended. Duran arrested Aguilar for driving with a suspended license.

Duran told Aguilar his car would be towed, and asked for the keys to do an inventory search for the towing company. After some prodding, Aguilar gave Duran the key to the trunk. Duran opened the trunk and saw what looked like a brand new toolbox. He was unable to open the box and asked Aguilar for the key. Aguilar said he did not have the key with him. Aguilar also said the toolbox was his. Duran told Aguilar the toolbox looked expensive and would be taken to the police department for safekeeping.[2] While Duran was driving Aguilar to the county jail, Aguilar said the toolbox was not his and he had obtained it about two days earlier.

Duran testified at the preliminary hearing he followed Aguilar's car because he suspected criminal activity and wanted to investigate; he intended to stop the car as soon as he saw a traffic violation; one of the reasons he had the car towed, i.e., impounded, was so he could look in the trunk (he never gave any other reasons for the impound); and he was required to conduct an inventory of every towed vehicle. Duran said he had discretion

---

[2] Pete Schoonover, the owner of the toolbox, testified it was a Waterloo box; Waterloo is "the Cadillac of the line"; and the box had Proto tools in it. Apparently, it took two people to bring the box into the courtroom.

to decide whether to have a vehicle towed when the driver was stopped, i.e., cited, for a driving violation; there were written policies as to the exercise of such discretion; he had not seen the policies; and he had 90 percent of the vehicles towed.

Aguilar noticed a motion in superior court to suppress the toolbox and his statements in relation thereto. The parties submitted the motion on the preliminary hearing transcript. The court denied the motion.

Aguilar pleaded guilty to receiving stolen property, and the remaining charged count, driving when privilege suspended for driving under the influence (Veh. Code, § 14601.2, subd. (a)) was dismissed. The court suspended imposition of sentence and granted a two-year probation. This appeal followed.

## DISCUSSION

■■■ Aguilar contends the warrantless search of the trunk of his car pursuant to an admittedly pretextual traffic stop was unreasonable. We agree. As the Ninth Circuit said in *United States* v. *Hellman* (9th Cir. 1977) 556 F.2d 442, "it is clear from the testimony of the searching officer that the citation, the impounding and the inventorying all were for 'an investigatory police motive.' This alone is sufficient to conclude that the warrantless search of the car was unreasonable." (*Id*. at p. 444.)

So it is in the case here. It is clear from Duran's testimony that the arrest and the impound were for "an investigatory police motive." As to the inventory, although Duran testified he was required to inventory every vehicle he impounded, this does not justify the inventory, but merely narrows the inquiry to the impound and the events leading thereto.

The People rely on the United States Supreme Court's opinions in *South Dakota* v. *Opperman* (1976) 428 U.S. 364 [49 L.Ed.2d 1000, 96 S.Ct. 3092] and *Colorado* v. *Bertine* (1987) 479 U.S. 367 [93 L.Ed.2d 739, 107 S.Ct. 738]. However, those opinions do not support the search here.

In *South Dakota* v. *Opperman, supra,* 428 U.S. 364, police officers impounded and searched an unoccupied car after they had ticketed it twice for illegal parking. In holding the search was reasonable, the court noted "there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive." (*Id*. at p. 376 [49 L.Ed.2d at p. 1009].)

In *Colorado* v. *Bertine, supra,* 479 U.S. 367, a police officer arrested the driver of a van for driving under the influence, and another officer searched

the van pending its impound. Departmental regulations required inventory of impounded vehicles, but gave the officers discretion to choose between impounding a vehicle and locking it in a public parking place. In upholding the search the court reasoned:

"Nothing in *Opperman* or *Lafayette* [(*Illinois* v. *Lafayette* (1983) 462 U.S. 640)] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Here, the discretion afforded the Boulder police was exercised in the light of standardized criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it. [Fn. omitted.] There was no showing that the police chose to impound Bertine's [vehicle] in order to investigate suspected criminal activity." (*Colorado* v. *Bertine, supra,* 479 U.S. at pp. 375-376 [93 L.Ed.2d at p. 748].)

The People argue Duran acted lawfully in "conform[ing] with a policy practiced 90 percent of the time to safeguard the seized property." However, this begs the question. First, Duran did not testify the impound "policy" was practiced 90 percent of the time, nor did he give any reasons for the policy. He testified *he* impounded 90 percent of the time; he had not seen the policy; and one of the reasons he impounded Aguilar's car was to look in the trunk.

Moreover, even if the Calipatria Police Department had a policy requiring the impound of all vehicles whose drivers had been cited, the policy would not necessarily be reasonable. (See *People* v. *Steeley* (1989) 210 Cal.App.3d 887, 891 [258 Cal.Rptr. 699]: "unreasonable procedures do not ipso facto become standard, and therefore legal, merely because they are contained in a written directive.")

"It is well settled that inventories of impounded vehicles are reasonable where the process is aimed at securing or protecting the car and its contents. [Citation.] Such searches are unreasonable and therefore violative of the Fourth Amendment when used as a ruse to conduct an investigatory search. (*Colorado* v. *Bertine, supra,* 479 U.S. at pp. 371-372. . . .)" (*People* v. *Steeley, supra,* 210 Cal.App.3d at pp. 891-892.)

Here, as we have noted, because inventories were required of all impounded vehicles, we focus on the purpose of the impound rather than the purpose of the inventory. Duran testified one, if not the only, purpose of the impound was to conduct an investigatory search. Accordingly, the impound and the resulting search were unreasonable, and the trial court should have granted Aguilar's motion to suppress the evidence produced as

a result of the search, namely the toolbox and his statements in relation thereto.

## DISPOSITION

The judgment is reversed.

Froehlich, J., and Nares, J., concurred.

A petition for a rehearing was denied April 8, 1991.