[No. D014225. Fourth Dist., Div. One. Jan. 28, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH RAUL URIBE et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Thomas W. Condit, under appointment by the Court of Appeal, and Michael G. Sharpe for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Leslie B. Fleming, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FROEHLICH, J.**—Appellants Joseph Raul Uribe (Uribe) and Jorge Adrian Nunez (Nunez) were each charged with one count of transportation of cocaine (Health & Saf. Code, § 11352) and one count of possession of cocaine for sale (Health & Saf. Code, § 11351). As to both counts it was alleged appellants were personally armed with a firearm within the meaning of Penal Code[2] section 12022, subdivision (c), and as to Nunez it was further alleged he was armed with a firearm within the meaning of section 12022, subdivision (a). It was also alleged the cocaine weighed in excess of 28.5 grams within the meaning of section 1203.073, subdivision (b)(1).

[2]All statutory references are to the Penal Code unless otherwise specified.

After a series of unsuccessful pretrial and trial motions (the relevant ones to be detailed below) a jury convicted both appellants on both counts and found true all weapons allegations.[3] The court denied Uribe's motion for a new trial and sentenced Uribe to the midterm of four years on count one and to the midterm of four years on the appended section 12022, subdivision (c) allegations, for a total term of eight years. It also denied Nunez's motion for a new trial and sentenced him to the low term of three years on count one and to the midterm of four years on the appended section 12022, subdivision (c) allegations, for a total term of seven years. The remaining sentences for both men were stayed pursuant to section 654.

Appellants' principal contention, which we will discuss first, is that certain evidence seized during a traffic stop should have been suppressed. We will defer discussion of the bulk of the evidence until part II of this opinion, at which point we will address the balance of appellants' contentions.

I

## THE SEARCH AND SEIZURE ISSUE

Appellants' primary claim is that the trial court erroneously denied their motion to suppress the evidence seized during the traffic stop. Appellants argue that because an arrest may not be made merely as a pretext to search for evidence of other crimes, the search here was improper because the stop was made for the purpose of furthering the narcotics investigation. The People argue, however, that so long as the observed traffic violations rendered the stop objectively reasonable, the ulterior purpose of the officers did not impugn the validity of the stop.

Before resolving this issue, we must first review the factual and procedural background giving rise to the trial court's ruling.

### A. *Facts*

The facts on which the motion to suppress was based were undisputed. Agent Brown was conducting a cocaine investigation which had focused on a certain area of "C" Street. On October 17, 1990, around 5:30 p.m., Brown received information from a confidential informant (the CI) to watch for a

---

[3]Curiously, the "weight" allegations were neither submitted to the jury nor decided by it. Our review of the record has not disclosed any other disposition (i.e., stipulation, dismissal, etc.) of those allegations. However, since neither party asserts any error in connection therewith, we do not further address the evaporating "weight" allegations.

certain truck which the CI said was en route from Los Angeles to San Diego to deliver a kilo of cocaine. Brown spotted Uribe's truck in La Jolla and followed it to a residence on "C" Street.

Shortly after appellants drove away from the "C" Street house, Brown radioed marked police units and asked them to pull the truck over for a traffic violation. The prosecutor conceded narcotics officers were hoping the stop would reveal evidence of narcotics violations.

Two marked cars responded, one being driven by Verduzco and the other by Contreras and his partner. Contreras understood Brown was interested in narcotics in the vehicle. Verduzco also understood Brown was interested in narcotics, and Verduzco (a self-described "busybody") went to cover the call.

The officers in both cars made visual contact with the truck, saw it make an illegal U-turn, and then saw it enter the freeway. They followed and later saw the truck make an unsafe lane change. At that point Contreras told Verduzco, who was closer to the truck, to make the stop. Verduzco activated his lights and stopped the truck, with Contreras pulling up and stopping behind Verduzco. Verduzco approached the driver's side and asked for the driver's license. Verduzco did not carry his ticket book when he approached because, he later explained, his initial contact includes a safety check and he wants nothing in his hands during this contact. However, Verduzco said he would have issued a citation had no narcotics been found.

Meanwhile, Contreras got out of the car to watch the driver while Verduzco approached. When he felt assured that Verduzco was safe, Contreras approached the passenger's side, spoke with Uribe, and obtained Uribe's consent to search the truck. The request for consent occurred three to five minutes after the initial stop. The search produced the drugs and weapon.

B. *The Trial Court's Ruling*

Appellants moved under section 1538.5 to suppress the evidence seized during the traffic stop, claiming it was an improper pretextual stop motivated by the desire to search for evidence of crimes unrelated to the traffic violations. The prosecution opposed the motion, arguing that the subjective motivations of the officers were irrelevant and that the stop was valid so long as it was objectively justified by the observed traffic violations.

The trial court held that a pretextual stop only occurs when there has been no actual traffic violation or no intent to cite for that violation. In that there

was an actual traffic violation, the trial court opined the stop was legal even though in reality it was motivated by the desire to search for evidence of other crimes. Accordingly, the trial court ruled the stop here did not violate the proscription against pretextual stops because the officer witnessed a violation and would have cited the driver had narcotics not been found.

C. *The Trial Court Did Not Err in Denying the Motion to Suppress Evidence*

It is undisputed that the unsafe lane change provided ample objective cause for a traffic stop.[4] (See *People* v. *Franklin* (1985) 171 Cal.App.3d 627, 633-634 [217 Cal.Rptr. 529].) The dispositive issue is whether an objectively reasonable stop is rendered illegal, as a "pretextual" stop, where the officers held a subjective desire to search for narcotics.

Appellants cite a long line of cases holding that traffic violations may not be used as a pretext to stop and search a vehicle for evidence of other crimes. We conclude, however, that the subsequent decisions in *Scott* v. *United States* (1978) 436 U.S. 128 [56 L.Ed.2d 168, 98 S.Ct. 1717] and *Maryland* v. *Macon* (1985) 472 U.S. 463 [86 L.Ed.2d 370, 105 S.Ct. 2778] have stripped the bulk of appellants' cases of any significance.[5] We view the *Scott/Macon* line as establishing the rule that because the Fourth Amendment protects against only unreasonable searches and seizures, a search or seizure which is reasonable based on the objective facts is not rendered unreasonable merely because the officer held an improper subjective motivation at the time of the search.[6]

In *Scott* v. *United States, supra,* 436 U.S. 128, a motion was made to suppress the results of a wiretap. The defendant claimed the agents knew of,

---

[4]An officer testified that appellants' truck cut across two or three lanes of freeway traffic and across a simulated island, and that the maneuver was so severe that other vehicles had to brake in order to avoid colliding with the truck. The officer said the movement was so severe he had a hard time making the same movement while following appellants. Appellants do not contend these facts provided insufficient objective grounds for the stop.

[5]The majority of cases cited by appellants predates the *Scott/Macon* line of authority. Thus, while appellants claim "improper" subjective motives will invalidate an otherwise objectively reasonable stop, most of the cases they rely on for the "federal" rule (such as *Taglavore* v. *United States* (9th Cir. 1961) 291 F.2d 262, *Amador-Gonzalez* v. *United States* (5th Cir. 1968) 391 F.2d 308, and *Blazak* v. *Eyman* (D.Ariz. 1971) 339 F.Supp. 40), the California rule (such as *People* v. *Molarius* (1956) 146 Cal.App.2d 129 [303 P.2d 350]), and the out-of-state approach (such as *People* v. *Flanagan* (1977) 56 A.D.2d 658 [391 N.Y.S.2d 907]) lack significant precedential value after *Scott/Macon.* Indeed, the Fifth Circuit has itself acknowledged that its *Amador-Gonzalez* decision is without relevance after *Scott/Macon.* (See *U.S.* v. *Causey* (5th Cir. 1987) 834 F.2d 1179, 1184.) We therefore concentrate on only the cases which have been decided after *Scott/Macon* to evaluate the appellants' claim.

[6]We acknowledge that the *Scott/Macon* analysis is not definitive. *Scott* and *Macon* dealt with issues slightly different from "pretextual" searches, and even the courts which have concluded the *Scott/Macon* line of authority is relevant to pretextual searches have cautioned

but consciously and in bad faith disregarded, a requirement that they take steps to avoid intercepting calls which did not involve an illegal subject matter (the so-called "minimization" requirement). Since the agents intercepted *all* calls, only 40 percent of which were narcotics related, the defendant argued the search was rendered unreasonable by the agent's bad faith exploitation of the warrant authorizing the wiretap. The court held that violations of the Fourth Amendment are tested by an objective evaluation of the officers' actions, based on the facts known to the officer at the time. It stated: ". . . the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action as long as the circumstances, viewed objectively, justify that action." (*Id.* at p. 138 [56 L.Ed.2d at p. 178].)

Subsequently, in *United States* v. *Villamonte-Marquez* (1983) 462 U.S. 579 [77 L.Ed.2d 22, 103 S.Ct. 2573], the court upheld drug smuggling convictions based on evidence seized when customs officials, accompanied by a local police officer, boarded a vessel to inspect the ship's documents as permitted by law. The defendants claimed the search was invalidated because in reality the officials were acting on an informant's tip and were subjectively motivated by a desire to search for drugs. The court peremptorily rejected the claim, stating, "[t]his line of reasoning was rejected in a similar situation in *Scott* . . . and we again reject it." (*Id.* at p. 584, fn. 3 [77 L.Ed.2d at p. 28].)

Finally, in *Maryland* v. *Macon* (1985) 472 U.S. 463 [86 L.Ed.2d 370, 105 S.Ct. 2778] an undercover officer "purchased" a pornographic magazine from the clerk of the store, gave him a marked $50 bill, and then later arrested him for obscenity law violations. When police arrested him they retrieved the $50 bill as they had intended to do. The defendant claimed the Fourth Amendment was violated by the "seizure" of the magazine without a warrant, arguing the sale could not be deemed a bona fide sale, making it in reality a seizure, because the "secret intent" of the police to retrieve the money made the "sale" evaporate. The court disagreed, stating:

"Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' [quoting *Scott*] and not on the officer's actual state of mind at the time the challenged action was taken. . . . Objectively viewed, the transaction was a sale in the ordinary course of business. The sale is not retrospectively transformed into a warrantless

such cases are not literally controlling on the issue. (See *U.S.* v. *Trigg* (7th Cir. 1989) 878 F.2d 1037 and *U.S.* v. *Causey, supra,* 834 F.2d 1179 [recognized *Scott/Macon* cases were not directly on point but by analogy supported use of an objective test].)

seizure by virtue of the officer's subjective intent to retrieve the purchase money to use as evidence." (472 U.S. at pp. 470-471 [86 L.Ed.2d at p. 378].)

Based on *Scott/Macon*, numerous courts have subsequently held that a stop which is reasonable based on the objective facts is not made unreasonable by the officer's subjective hope the stop might yield evidence of other crimes. (See *U.S.* v. *Cummins* (8th Cir. 1990) 920 F.2d 498, 500-501 [where officer observed traffic violation, he had the right to stop for that violation, and valid stop is no less valid merely because he suspected other criminal conduct]; *U.S.* v. *Trigg, supra,* 878 F.2d 1037 [if police objectively have probable cause to stop, and do no more than legally permitted, their subjective motives are not germane]; *U.S.* v. *Causey, supra,* 834 F.2d at p. 1184 ["so long as police do no more than they are objectively authorized and legally entitled to do, their motives in doing so are irrelevant and hence not subject to inquiry"]; *U.S.* v. *Hawkins* (3d Cir. 1987) 811 F.2d 210, 212-215.) The courts in two other circuits have adopted a substantially similar test: where a stop is motivated by the ulterior purpose of searching for evidence of an unrelated crime, it is still a valid stop if a reasonable officer would have stopped the car absent the illegal motive. (See *U.S.* v. *Guzman* (10th Cir. 1988) 864 F.2d 1512 [test is not whether the facts "could" allow a valid stop, but whether under the same facts a reasonable officer "would" have made the stop absent the invalid purpose]; accord, *U.S.* v. *Miller* (11th Cir. 1987) 821 F.2d 546.) Our court has likewise recently concluded that the *Scott/Macon* line imposes an objective, not subjective, test on the propriety of a stop. (See *People* v. *Lloyd* (1992) 4 Cal.App.4th 724, 733 [6 Cal.Rptr.2d 105].)

Questions regarding suppression of evidence are controlled by federal law. (*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744].) The foregoing analysis therefore indicates that the patrol officers' subjective desire to search for drugs in this case is irrelevant. The issue is whether a reasonable officer "could have" (or under the 10th Circuit test "would have") stopped the vehicle for the observed traffic violation. It is objectively reasonable for a traffic officer to stop a vehicle based upon its sudden maneuver across lanes of freeway traffic and over a simulated island, in a manner so severe that other vehicles must brake in order to avoid a collision. Hence the stop and subsequent search were not constitutionally defective.

Appellants seek to avoid these authorities and invalidate the search by noting that two cases (*United States* v. *Smith* (9th Cir. 1986) 802 F.2d 1119 and *People* v. *Aguilar* (1991) 228 Cal.App.3d 1049 [279 Cal.Rptr. 246])

have continued to declare that an officer's subjective motivations can invalidate an otherwise objectively reasonable stop. We quickly dispense with *Smith,* because its broad pronouncements rely entirely upon pre-*Scott/Macon* cases and omit reference to the *Scott/ Macon* principle. Further, its discussion of "pretextual search" was entirely dicta, since the court concluded the arrest was not pretextual under even the subjective test. (See 802 F.2d at pp. 1123-1124.)

We therefore turn to *Aguilar.* The issue in *Aguilar* was the propriety of an "inventory search." The officer, suspecting felonious activity, followed the vehicle until it failed to signal for a right turn. He stopped the vehicle, discovered the defendant was driving with a suspended license and placed him under arrest. He then told the defendant the vehicle would be towed and asked for the keys in order to conduct an "inventory search." After some prodding, the defendant gave him the keys. The search produced stolen property. (*People* v. *Aguilar, supra,* 228 Cal.App.3d at p. 1051.)

The court recognized that the only issue was the propriety of the impound: Was the *decision to impound* proper, or was it a pretext to allow an investigatory search? (*People* v. *Aguilar, supra,* at p. 1052.) The officer admitted that "one reason" for the impound was to allow him to search, *and he could give no other objectively reasonable basis for impounding the vehicle. Aguilar* noted that an inventory search, while reasonable when aimed at protecting or securing the car and its contents, is unreasonable when used as a ruse to allow an investigatory search.

We thus harmonize *Aguilar* with the *Scott/Macon* approach because the *Aguilar* court concluded the act justifying the search (i.e., the impound) had no objectively reasonable justification, but was solely a ruse to allow a search. Thus, the search was *not* an objectively reasonable act rendered improper by the officer's subjective motives, but was a search based upon an impound for which no objectively reasonable basis existed.

II

THE REMAINING CONTENTIONS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1432.

## III

### DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Work, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 29, 1993. Mosk, J., was of the opinion that the petition should be granted.