Filed 4/17/13  P. v. Zimmerman CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>ERIC MATTHEW ZIMMERMAN,<br><br>  Defendant and Appellant. | B237016<br><br>(Los Angeles County<br>Super. Ct. No. PA067836) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cynthia L. Ulfig, Judge.  Reversed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following the denial of a motion to suppress evidence, Eric Matthew Zimmerman was convicted by a jury of transportation of a controlled substance and possession for sale of a controlled substance. Zimmerman contends the methamphetamine found in his car should have been suppressed as the fruit of an unlawful search. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2010 Los Angeles County Sheriff's deputies Mark Vencer and John McKay stopped Zimmerman for driving over the speed limit. As Deputy McKay approached the car, Zimmerman "was highly irate" and "screaming profanities." McKay told Zimmerman to place his hands on the steering wheel, but Zimmerman said with his voice raised, "You can't tell me what to do. You have no right to be stopping me." The deputies placed Zimmerman in the back of the patrol car to ensure officer safety. After it was determined Zimmerman's driver license was suspended, he was arrested. During an inventory search of the car, Deputy Vencer found three small, individually wrapped packages of methamphetamine inside an empty cigarette box in the trunk. No drug paraphernalia, drug packaging materials, scales, excess cash or records regarding drug sales were recovered. McKay testified Zimmerman did not appear to be under the influence of methamphetamine.

At the preliminary hearing Zimmerman moved to suppress the evidence recovered during the inventory search and statements he made after the arrest on the ground the search was conducted to find incriminating evidence.[1] Deputy McKay testified the inventory search was conducted for Zimmerman's benefit because the deputies intended to tow the car and documenting valuable articles prevents the towing company from stealing anything. McKay explained, however, the officers did not complete the inventory because they decided not to tow the car, which was in an area where McKay believed it would be safe from theft or vandalism: "[B]ased on the fact . . . [Zimmerman] had not been notified by the courts yet that his license had been suspended, he had no

---

[1] Zimmerman told Deputy McKay he acted as a middleman between drug dealers and distributors. On the night of his arrest he was on his way to pick up more "product."

prior knowledge that his license was suspended, that he was not the registered owner of the vehicle, and the fact that he begged me not to tow his vehicle because it belonged to his girlfriend, I decided at the last second to not tow his vehicle." McKay further explained Zimmerman had asked to speak with a detective so he could make a deal "to work off a case." According to McKay, the detective asked him not to tow the car because Zimmerman "would be released soon and then would immediately start working for the detective."

The court denied the motion to suppress, finding it was reasonable for the deputies to begin inventorying the contents of the car because Zimmerman's license was suspended: "[I]t looks as to count 3, he's alleged[] to have been driving on a suspended license, although there's testimony that he apparently was not aware at the time. But be that as it may, he was on a suspended license. I know officers typically at that time when the vehicle is being driven on a suspended license, it's subject to impound. And it seems reasonable to me that the officer would have begun that process of dealing with the inventory. So I think that the inventory search justifies the search of the vehicle . . . ."

The jury found Zimmerman guilty of transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)) and possession for sale of a controlled substance (Health & Saf. Code, § 11378).[2] The trial court sentenced Zimmerman to county jail for a term of nine years.

**DISCUSSION**

1. *Standard of Review*

In reviewing the ruling on a motion to suppress, the appellate court defers to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. Redd* (2010) 41 Cal.4th 691, 719; *People v. Ayala* (2000) 23 Cal.4th 225, 255; *People v. James* (1977) 19 Cal.3d 99, 107.) The power to judge credibility, weigh evidence and draw factual inferences is vested in the trial court. (*James,* at p. 107.)

[2] Zimmerman had also been charged with driving with a suspended license (Veh. Code, § 14601.1, subd. (a)), but the charge was dismissed in furtherance of justice (Pen. Code, § 1385, subd. (a)).

3

However, in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*Redd*, at p. 719; *People v. Glaser* (1995) 11 Cal.4th 354, 362.)

2. *Governing Law*[3]

The Fourth Amendment's prohibition of "unreasonable searches and seizures" generally precludes warrantless searches of an individual and his possessions, including an automobile. (See *In re Arturo D.* (2002) 27 Cal.4th 60, 68.)[4] However, the Supreme Court has recognized that police officers have a legitimate interest in taking an inventory of the contents of vehicles they legally tow and impound "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." (See *Colorado v. Bertine* (1987) 479 U.S. 367, 372 [107 S.Ct. 738, 93 L.Ed.2d 739].) Such "inventory searches" are now considered "a well-defined exception to the warrant requirement of the Fourth Amendment." (*Id.* at p. 371.) To ensure it is not merely used as a pretext or ruse to search vehicles for contraband or other incriminating evidence, a warrantless inventory search must be conducted "pursuant to standard police procedures" (*South Dakota v. Opperman* (1976) 428 U.S. 364, 372 [96 S.Ct. 3092, 49 L.Ed.2d 1000] and be

---

[3]      Whether relevant evidence obtained by assertedly unlawful means must be excluded is determined exclusively by deciding whether its suppression is mandated by the federal Constitution. (Cal. Const., art. I, § 28, subd. (f)(2) [formerly subd. (d)]; *People v. Lenart* (2004) 32 Cal.4th 1107, 1118.)

[4]      A search of an automobile incident to the arrest of the driver or a passenger is valid "only if the arrestee is within reaching distance of the passenger compartment [or other area searched] at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." (*Arizona v. Gant* (2009) 556 U.S. 332, 351 [129 S.Ct. 1710, 173 L.Ed.2d 485].) Here, Zimmerman was secured inside the patrol car at the time of his arrest for driving on a suspended license. Although a warrantless search of an automobile is also lawful if there is probable cause to believe it contains evidence of criminal activity (see *United States v. Ross* (1982) 456 U.S. 798, 820-821 [102 S.Ct. 2157, 72 L.Ed.2d 572]; *Gant*, at p. 347), there is no claim in this case the deputies suspected Zimmerman was engaged in criminal activity other than speeding and driving on a suspended license prior to searching the car.

"sufficiently regulated" to avoid wholly unfettered police discretion. (*Florida v. Wells* (1990) 495 U.S. 1, 4 [110 S.Ct. 1632, 109 L.Ed.2d 1]; see also *Opperman*, at p. 384.)[5]

A defendant meets his or her initial burden of challenging the constitutionality of a warrantless search or seizure by "simply assert[ing] the absence of a warrant and mak[ing] a prima facie showing to support that assertion." (*People v. Williams* (1999) 20 Cal.4th 119, 130.) The People then bear the burden of proving that both the impoundment and search were constitutionally reasonable under all the circumstances. (*Ibid*.; *People v. Williams* (2006) 145 Cal.App.4th 756, 762.) Reasonableness is "the touchstone of the Fourth Amendment." (*Florida v. Jimeno* (1991) 500 U.S. 248, 250 [111 S.Ct. 1801, 114 L.Ed.2d 297].)

3. *The People Failed To Satisfy Their Burden of Establishing the Search of Zimmerman's Car Was Conducted Pursuant to a Standardized Inventory Procedure*

In *Florida v. Wells, supra*, 495 U.S. 1 the Supreme Court held the trial court should have suppressed marijuana found when officers opened a locked suitcase while inventorying a vehicle. (*Id*. at p. 2.) Reiterating the limitation on inventory searches it had announced in *Colorado v. Bertine, supra,* 479 U.S. 367, the Court explained "standardized criteria [citation] or established routine [citation] must regulate the opening

---

[5] Evidence discovered in an inventory search conducted pursuant to clear police department guidelines must nonetheless be excluded if the decision to impound the vehicle violated the Fourth Amendment. (See *People v. Aguilar* (1991) 228 Cal.App.3d 1049, 1053.) Whether an impound here would have been proper is far from clear. The Court of Appeal in *People v. Williams* (2006) 145 Cal.App.4th 756 held a decision to impound a vehicle must be based on a valid community caretaker or public safety function, not simply statutory authorization. In contrast, this court in *People v. Green* (1996) 46 Cal.App.4th 367 suggested the authority to impound under the Vehicle Code is all that is required for a valid impoundment, explaining, because the "officers acted pursuant to standard impound procedures provided by Vehicle Code section 22651, subdivision (p), [they] acted well within their authority to impound defendant's car." (*Green*, at p. 373.) Because we hold the inventory search itself was unreasonable under governing Fourth Amendment principles, we need not attempt to reconcile *Williams* and *Green* or determine whether any community caretaker function, if required, would have justified an impoundment in this case.

5

of containers found during inventory searches" to safeguard the "principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." (*Wells*, at p. 4.) "The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'" (*Ibid*.) Because the record in *Wells* contained no evidence of *any* policy of the law enforcement agency whose officers had conducted the search regarding the opening of closed containers during inventory searches, the Supreme Court concluded the marijuana found in the suitcase should have been suppressed: "[A]bsent such a policy, the . . . search was not sufficiently regulated to satisfy the Fourth Amendment . . . ." (*Id.* at p. 5.)

In *People v. Williams, supra*, 20 Cal.4th 119 the California Supreme Court reinforced the *Bertine* and *Wells* standard, emphasizing the "prosecution must always prove the existence of a policy supporting an inventory search . . . ." (*Williams,* at p. 138.) "Because of the risk that an inventory search will be 'a ruse for a general rummaging,' a risk that this case particularly exemplifies, a valid inventory search must adhere to a preexisting policy or practice. [Citation.] This rule may require the prosecution to prove more than the existence of some general policy authorizing inventory searches; when relevant, the prosecution must also prove a policy or practice governing the opening of closed containers encountered during an inventory search." (*Ibid*.; see *Florida v. Wells*, *supra,* 495 U.S. at pp. 4-5.) The officers in *Williams* found methamphetamine in closed leather bags inside the defendant's truck during the inventory search. Because the prosecution did not prove the leather bags had been opened "pursuant to a policy or practice," the Court held the warrantless search was unlawful. (*Williams*, at p. 138.)

As in *Florida v. Wells, supra*, 495 U.S. and *People v. Williams, supra*, 20 Cal.4th 119, the People failed to prove the existence of any general policy of the Los Angeles County Sheriff's Department authorizing inventory searches, let alone a policy or practice governing searches of packages or container where drugs may be concealed.

6

The only testimony that even hinted at the existence of a policy was Deputy McKay's testimony they conducted an inventory search to protect Zimmerman from theft because they intended to have the vehicle towed. This testimony suggests, at most, that inventorying a vehicle is standard department procedure whenever someone is arrested for driving with a suspended license. However, as emphasized in *Williams* an inference such a policy exists is not enough. The People must prove the actual existence of a policy, including "the specifics" that govern those areas actually searched, albeit the policy need not be in writing. (*Williams,* at p. 138; see *id.* at p. 127 ["*Wells* does not require a *written* policy governing closed containers or a policy that leaves no room for police discretion, but the record must at least indicate that police were following some 'standardized criteria' or 'established routine' when they elected to open the containers"].) The prosecution did not present evidence of any policy whatsoever and therefore failed to meet its burden of justifying the warrantless search.

## DISPOSITION

The judgment of conviction is reversed. On remand the trial court is directed to vacate its order denying Zimmerman's motion to suppress evidence and to enter a new order granting the motion.


PERLUSS, P. J.

We concur:


WOODS, J.


JACKSON, J.

7