Filed 11/24/14  P. v. Newton CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065274 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD250702) |
| KELLY MARIE NEWTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joseph P. Brannigan, Judge.  Affirmed.

Bird Rock Law Group and Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

After the denial of her motion to suppress evidence under Penal Code[1] section 1538.5, Kelly Marie Newton pleaded guilty to one count of conspiracy (§ 182, subd. (a)(1)). The remaining charges were dismissed. Newton was granted probation.

Newton appeals challenging only the validity of the traffic stop that ultimately resulted in the discovery of controlled substances and drug paraphernalia in her car and in the hotel room she shared with her boyfriend. She contends the stop was not justified based on the absence of license plates, because there was a temporary registration attached to the front windshield. She further argues that even if the stop was lawful, the officer exceeded the proper scope of the stop by discussing her driver's license, and by conducting a record check which revealed an outstanding felony warrant, the fact her license had been suspended and that she was on probation with a "Fourth Waiver."

Based on our review of the record we are satisfied the officer had reasonable grounds to stop Newton and that the investigation following the stop was reasonable. We will therefore affirm.

STATEMENT OF FACTS

At about midnight on September 9, 2013, San Diego Police Officer Jeffrey Wuehler was conducting surveillance of a house known for narcotics activity. He observed Newton's car parked, completely blocking an alley. As Wuehler followed the car onto the freeway he noticed the car did not have a rear license plate. He stopped the car shortly thereafter.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

When the officer approached the car he noticed the front window was tinted, which he believed violated the Vehicle Code. Newton was the only occupant in the car. Before the officer could ask, Newton produced an identification card and explained it was given to her by the Department of Motor Vehicles (DMV) because it was cheaper than a driver's license. Newton said she was not on probation or parole.

Wuehler conducted a record check which revealed that Newton's driver's license had been suspended, that she was on probation with a waiver of her Fourth Amendment rights, and that there was a felony arrest warrant for her. Newton was arrested.

A search of the vehicle revealed a quantity of narcotics paraphernalia and some controlled substances. The officer also discovered a hotel key. That discovery led to a subsequent search of a hotel room. That search, in turn, produced more controlled substances and led to the arrest of the codefendant.

After the officer completed the stop and had arrested Newton, he discovered a temporary registration on the passenger side windshield. He had not noticed the registration before that as he was concentrating on the occupant of the car to ensure his safety.

## DISCUSSION

Newton contends the traffic stop was an unlawful pretext stop accomplished without adequate justification. Newton argues, somewhat in the alternative, that even if the stop was valid, the officer should have focused only on determining whether there was a valid registration. Since there was a registration on the windshield, Newton

3

contends the stop should have been limited to a view of the window. We disagree and find the stop and subsequent investigation reasonable under the circumstances.

## A. Standard of Review

When the trial court hears a motion to suppress evidence under section 1538.5, the court must first determine the historical facts and then apply the applicable law to those facts. When an appellate court reviews the trial court decision, we apply the substantial evidence standard of review to the factual determinations and review the trial court's legal conclusions de novo. (*People v. Williams* (1988) 45 Cal.3d 1268, 1301; *People v. Leyba* (1981) 29 Cal.3d 591, 596-597.)

Where police have detained a person, they must have sufficient articulable facts to establish a reasonable suspicion that the person detained may be involved in criminal activity. (*Terry v. Ohio* (1968) 392 U.S. 1; *In re Raymond C.* (2008) 45 Cal.4th 303, 307 (*Raymond C.*).)

## B. Legal Principles

"As a general matter, the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred." (*Whren v. U.S* (1996) 517 U.S. 806, 810.) Such a detention is lawful, even if the officer has a subjective purpose to investigate different criminal activity. That type of stop is often referred to as a "pretextual stop." The question to be answered in such stops is whether there is objective support for a belief that a violation has occurred and not what the officer's subjective purpose might be. (*Id.* at p. 813; *People v. Uribe* (1993) 12 Cal.App.4th 1432, 1435-1436.)

4

When an officer has reasonable suspicion that a vehicle is not validly registered, the officer may stop the vehicle to check the driver's license and the vehicle's registration. (*People v. Saunders* (2006) 38 Cal.4th 1129, 1135.)

C.  Analysis

It is important to note the officer first intended to stop Newton based upon his observation of her car parked in a manner that totally blocked an alley such that no other vehicle could pass.  The trial court noted that purpose and found it reasonable.  The respondent's brief notes that San Diego Municipal Code section 86.0121[2] makes it a violation to totally block an alley.  Obviously the fact the officer observed Newton's car, stopped in such manner for a period of time at midnight near a known location for narcotics activity aroused his suspicions.

When the officer followed Newton onto the freeway, he noticed there was no rear license plate and no temporary registration appearing from the back.  He could not see the front passenger side of the window from his position.  Thus, from what he could see the officer reasonably suspected the car may not be validly registered.

When the officer approached the car after the stop his attention was focused on the occupant.  Having made the stop in the early morning hours, he reasonably wished to identify the occupant before continuing his investigation.  It is important here that Newton greeted the officer with her identification card and a bizarre statement that the DMV had issued the identification card in lieu of a driver's license because it was

---

2    This section provides:  "No person shall stop or stand any vehicle in an alley in such manner that would prevent the passage of emergency vehicles."

cheaper.  It was certainly reasonable at that point for the officer to attempt to find out why Newton was driving a car with only a DMV identification and no license.  She had also offered that she was not on probation or parole.  By this point, the officer had also noticed what appeared to be illegally tinted windows, which perhaps explains why he had not yet noticed the paper registration on the passenger side of the windshield.

The record does not contain any testimony as to how long the officer's record check lasted, but it does establish that as soon as the officer received a response to his record check he was aware of an outstanding felony warrant, that Newton's driver's license was suspended and the fact that Newton was on probation with a "Fourth Waiver."  Plainly, the actions which followed the record check were lawful and not seriously challenged here.

The parties cite to *Raymond C., supra*, 45 Cal.4th 303, 306-308.  That case is controlling here.  The minor in *Raymond C.* was stopped because there was no valid registration displayed where the officer could see it.  Like the present case, the officer did not notice the paper registration until after the stop and the identification process had started.  The court in *Raymond C.* upheld the stop and subsequent investigation as a reasonable response by the officer to what was presented to him.  The court observed the officer was not "required to eliminate all innocent explanations that might account for the facts supporting a particularized suspicion" before the officer stopped the car.  (*Id.* at p. 308.)

Based upon this record we conclude the officer had reasonable suspicion of traffic violations including blocking an alley and the lack of visible registration of the car.  The

6

officer did not observe any registration before contacting Newton and hearing the unlikely explanation she volunteered for her lack of a driver's license, this information provided adequate justification for the officer to do a record check. After the record check, the rest, as they say, was history.

The trial court properly denied the motion to suppress.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.

7