Filed 10/9/15  P. v. Richardson CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEVIN L. RICHARDSON,<br><br>    Defendant and Appellant. | B262929<br><br>(Los Angeles County Super. Ct.<br> No. BA390389) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Barbara R. Johnson, Judge.  Affirmed.

Mgdesyan Law Firm and George G. Mgdesyan for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadmarmel, Jr., Supervising Deputy Attorney General, and Stacy S. Schwartz, Deputy Attorney General, Amanda V. Lopez, Deputy Attorney General, for Plaintiff and Respondent.

_____

After denial of his motion to suppress evidence pursuant to Penal Code section 1538.5, defendant and appellant Kevin L. Richardson entered pleas of no contest to possession of cocaine for the purpose of sale in count 2 (Health & Saf. Code, § 11351),[1] sale or transportation of cocaine in count 3 (§ 11352, subd. (a)), and possession of a cocaine while armed with a firearm in count 5 (§ 11370.1, subd. (a)). As to count 2 defendant admitted the substance exceeded 20 kilograms (§ 11370.4, subd. (a)(4)), and as to count 3 defendant admitted the substance exceeded 10 kilograms (§ 11370.4, subd. (a)(3)). Defendant also admitted suffering three prior controlled substance convictions (§ 11370.2) and serving two prior prison terms (Pen. Code, §667.5, subd. (b)). The trial court sentenced defendant to 14 years in state prison.

Defendant argues in his timely appeal that the trial court erred in denying his motion to suppress evidence. Defendant contends the initial stop of his vehicle violated the Fourth Amendment, and the prolonged detention was unconstitutional. We affirm.

**STATEMENT OF FACTS FROM THE MOTION TO SUPPRESS**

Drug Enforcement Administration Special Agent Michael Cabral, experienced in investigations of organizations involved in large scale narcotics trafficking, was part of a task force conducting a wiretap investigation[2] of the phone of George Casarez and two of his couriers on October 25, 2011. Intercepted phone calls indicated a delivery of "17 units of narcotics" would occur that day. Interception of Casarez's phone calls in September 2011 lead to the seizure of 24 kilograms of cocaine.[3] A green Nissan pickup

---

[1] Statutory references are to the Health and Safety Code, except as otherwise indicated.

[2] A task force identified as L.A. Impact, comprised of local, state, and federal law enforcement agencies, participated in the investigation.

[3] The seizure occurred on September 24, 2011, one month before the offenses charged in this case.

truck was observed during the investigation leading to the September 2011 narcotics seizure.

A surveillance was conducted on October 25, 2011, of a green Solara occupied by Casarez associates Jimmy Lopez and Fabricio Acosta. The Solara was previously involved in transporting narcotics. Several male Hispanics were observed moving around the Solara in a parking lot in Temecula, appearing to manipulate areas of the vehicle, and although no transfer of narcotics was observed, an intercepted phone call indicated 17 units of narcotics had been received.

The Solara was followed by surveillance officers to Downey, where it entered a gated complex of townhouses on Old River School Road. The Solara was admitted through the gate and drove to the garage of unit No. 8, where it remained for 20 minutes. At that time another call was intercepted from Casarez "indicating that the deal was done." Based on Agent Cabral's training and experience, he concluded the Solara had been used to drop off narcotics at the Downey location. Officer Christopher Port of the Hawthorne Police Department, an 11-year law enforcement veteran, was assigned to conduct surveillance. He also concluded the length of time the Solara was in the garage in Downey was consistent with narcotics being removed from hidden compartments in the vehicle and dropped off at the location.

Surveillance was maintained on the townhouse after the Solara left, and about two hours later, at 9:00 p.m., a green Nissan Frontier pickup driven by defendant gained entrance to the townhouse complex and drove into the garage of unit No. 8. Agent Cabral and Officer Port both formed the opinion defendant was there to obtain narcotics that had been dropped off earlier, because prompt removal from the location would limit the chances for law enforcement apprehension. Approximately 45 minutes later the Nissan pickup exited the garage and drove away from the townhouse complex.

Officer Port contacted the watch commander at the Downey Police Department to obtain the assistance of uniformed officers to conduct a traffic stop of the Nissan pickup. Uniformed local officers were requested for the traffic stop to maintain the integrity of the undercover operation.

3

Officers Robin Lynn Ward and her field training officer, Alejandro Rodriguez, working in uniform and in a marked police vehicle, were deployed for the purpose of making a traffic stop of the Nissan pickup if a Vehicle Code violation was detected. While following the Nissan pickup on the 710 freeway, Officer Ward observed that a trailer hitch on the rear of the vehicle partially blocked her view of two digits on the license plate, in violation of Vehicle Code section 5201.[4] Officer Rodriguez observed the same violation. When Officer Ward activated the red lights on the police vehicle, defendant pulled off the freeway and stopped. A video camera was activated when the red lights were turned on.[5]

Upon making contact with defendant, Officer Ward noticed an overturned plastic cup and ice on the floor of the pickup. Defendant's eyes "were a little red and watery." Officer Ward detected a slight odor of alcohol. Defendant denied consuming alcohol that evening or being on probation or parole, although the vehicle was equipped with a toximeter. Officer Ward learned through a check of defendant's license that he was on probation based on a driving under the influence conviction. Defendant consented to a search of the vehicle when Officer Ward told him she knew he was on probation and he was not permitted to have alcohol in the car. Officer Ward did not find alcohol in her search of the vehicle, but she noticed that screws were missing from air conditioner vents and from plastic paneling in the rear of the vehicle. There was also plastic wrapping hanging from under the seat, as if it had been pulled down. Based on her training and experience, Officer Ward believed there might be hidden compartments in the vehicle.

---

[4] Defendant presented two photographs of the rear license plate of the Nissan pickup at the hearing on the motion to suppress showing that the tow hitch did not block the license plate information. Officers Ward and Officer Rodriguez testified that the photographs were taken from an angle different from the view they had while traveling behind the pickup, and that the hitch did, in fact, block two of the digits on the license plate. Our independent review of the two defense photographs shows that the officers' testimony is supported by substantial evidence.

[5] We have reviewed the DVD recording of the stop and investigation.

4

Officer Ward administered a number of field sobriety tests before concluding defendant was not under the influence of alcohol.

Officer Port contacted narcotics Detective Brian Bruce, a K-9 handler employed by the City of Inglewood, to respond to the scene of the stop of the Nissan pickup. Detective Bruce was already on his way to the area when he received the call. He arrived at the traffic stop location around 20 minutes later, at approximately10:40 p.m. The field sobriety tests were still be administered when Detective Bruce arrived. His dog quickly alerted to two locations on the pickup, indicating the presence of narcotics. Detective Bruce examined the inside of the truck and believed it contained a false compartment due to loose or scratched screws. The pickup was impounded.

Special Agent Peter Tuttle of the California Department of Justice Bureau of Narcotics executed a search warrant on the Nissan pickup on October 27, 2011. Two hidden compartments were found in the rear of the passenger compartment, containing a large quantity of cocaine, a gun, ammunition, and cash.

### *Arguments to the Trial Court and Ruling*

Defendant argued that the probable cause to stop the Nissan pickup was fabricated because photographs (see footnote 4 above) show there was no Vehicle Code violation. Defendant further argued that the detention for a traffic violation was unduly prolonged. The only reason defendant was pulled over was because the uniformed officers had been directed to do so. Defendant maintained that the officers unduly prolonged the detention with unnecessary field sobriety tests.

The prosecutor argued the stop was valid for two reasons—the license plate was obscured by the tow hitch, and the wiretap conversations supported a reasonable belief that defendant was transporting narcotics. According to the prosecutor, the method of operation used to drop off and pick up the narcotics was typical for narcotic trafficking operations, which is why the surveillance team allowed the Solara to leave while the team maintained observation of the garage. The stop was lawful due to the violation of

5

Vehicle Code section 5201, under the reasoning of *People v. White* (2001) 93 Cal.App.4th 1022 (*White*). The stop was also lawful based on the narcotics investigation. Officer Ward had reason to investigate defendant for driving under the influence, and the Nissan pickup was searched with consent. Officer Ward saw the loose screws and plastic during the search for alcohol. Based on the time stamp on the video of the stop and investigation, the prosecutor argued that Detective Bruce and his dog arrived 26 minutes after the stop, and a detention of that length of time was not unreasonable under the totality of the circumstances.

In response, defendant argued that the actual reason for the long detention was manufactured.

The court denied the motion to suppress, finding the stop valid under *Whren v. U.S.* (1996) 517 U.S. 806, 810 (*Whren*) and *White, supra,* 93 Cal.App.4th 1022. The court ruled the driving under the influence investigation was reasonable based on the circumstances presented to the officers. The evidence of narcotics trafficking also provided a reasonable suspicion to stop the car. The court believed the amount of time involved in the field sobriety search was not unreasonable, and Detective Bruce and his dog arrived before the field sobriety tests were completed. Defendant did not establish an unduly prolonged detention.

## DISCUSSION

Defendant makes two arguments regarding the denial of his motion to suppress evidence. First, relying on defense photographs of the tow hitch and license plate, defendant contends "the mere fact that Officers Ward and Rodriguez could not read the rear license plate does not establish a violation of California Vehicle Code Section 5201 and there was no justification for the traffic stop in this case." Second, defendant argues that even if the traffic stop was lawful, the detention was unduly delayed for reasons not related to the traffic violation. Neither argument withstands scrutiny.

6

*Standard of Review*

"The federal Constitution's Fourth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits unreasonable seizures. Our state Constitution includes a similar prohibition. (Cal. Const., art. I, § 13.)" (*People v. Celis* (2004) 33 Cal.4th 667, 673 (*Celis*).) "[A]ny challenge to the admissibility of a search or seizure must be evaluated solely under the Fourth Amendment. (*People v. McPeters* (1992) 2 Cal.4th 1148, 1171; *In re Lance W.* (1985) 37 Cal.3d 873, 879; see also *California v. Greenwood* (1988) 486 U.S. 35, 38.)" (*People v. Carter* (2005) 36 Cal.4th 1114, 1141.)

"When, as here, we review a ruling on a defense motion to suppress evidence, we defer to the trial court's factual findings, but we independently apply the requisite legal standard to the facts presented. (*People v. Ayala* (2000) 23 Cal.4th 225, 255; *People v. Alvarez* (1996) 14 Cal.4th 155, 182.)" (*Celis*, *supra*, at p. 679.)

*Validity of the Traffic Stop*

The stop of the Nissan pickup driven by defendant did not violate the Fourth Amendment. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. (See [*Delaware v.*] *Prouse* [(1979) 440 U.S. 648,] 659; *Pennsylvania v. Mimms* [(1977)] 434 U.S. 106, 109.)" (*Whren*, *supra*, 517 U.S. at p. 810.) The trial court accepted the testimony of Officers Ward and Rodriguez that the tow hitch obscured their view of the rear license plate on the Nissan pickup. "A license plate mounted in a place that results in it being partially obstructed from view by a trailer hitch ball violates Vehicle Code section 5201[6] and, thus, provides a law enforcement officer with a lawful basis upon

---

[6] Vehicle Code section 5201 provides in part as follows: " (a) License plates shall at all times be securely fastened to the vehicle for which they are issued so as to prevent

7

which to detain the vehicle and hence its driver." (*White*, *supra*, 93 Cal.App.4th at p. 1026.) Defendant's contention that defense photographs demonstrate that the license plate was not blocked by the tow hitch is no more than a request that we reweigh the evidence, which is contrary to the settled standard of review.

The subjective motivation of members of the task force—desiring to gain access to the Nissan pickup to search for narcotics—does not vitiate the legality of the traffic stop for a Vehicle Code violation. "Not only have we never held, outside the context of inventory search or administrative inspection . . . that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." (*Whren*, *supra*, 517 U.S. at p. 812; see *People v. Uribe* (1993) 12 Cal.App.4th 1432, 1438.)

Even without regard to the Vehicle Code section 5201 stop, there was probable cause to arrest defendant based on the information gathered during the task force investigation. Probable cause to arrest is established by facts known to the arresting officers that would persuade someone with reasonable caution that the arrestee has committed a crime. (*People v. Thompson* (2006) 38 Cal.4th 811, 818; *Celis*, *supra*, 33 Cal.4th at p. 673.) "'[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts.' (*Illinois v. Gates* (1983) 462 U.S. 213, 232.) It is incapable of precise definition. (*Maryland v. Pringle* (2003) 540 U.S. 366, 371.)" (*Celis*, *supra*, at p. 673.)

The facts here would persuade an objective person that defendant was in possession of narcotics. (See *People v. Gomez* (2004) 117 Cal.App.4th 531, 538 (*Gomez*) [finding probable cause to arrest based on circumstances not materially different from those leading to the stop of defendant].) One month prior to defendant's arrest, a large quantity of cocaine had been seized based on intercepted phone calls from the same drug

---

the plates from swinging, shall be mounted in a position so as to be clearly visible, and so that the characters are upright and display from left to right, and shall be maintained in a condition so as to be clearly legible."

trafficker involved in this case. Both vehicles monitored in the surveillance in this case, the Solara and the Nissan pickup, were associated with the narcotics distribution ring. Phone calls intercepted by wiretap on the day of the defendant's arrest indicated an agreement to deliver a large quantity of narcotics, the delivery of the contraband to the Solara in the Temecula parking lot, and the drop off by the Solara in the townhouse garage in Downey. Experienced narcotics officers testified to their opinion that defendant had picked up the narcotics for delivery. Our independent review of the facts demonstrates the existence of probable cause to arrest for possession of narcotics.

### *Length of the Detention*

Defendant's argument that his detention was unduly prolonged, in violation of the Fourth Amendment, fails in light of our conclusion that there was probable cause for his arrest at the time of the traffic stop based upon the evidence of narcotics trafficking. (See *Gomez*, *supra*, 117 Cal.App.4th at p. 538.) Assuming the traffic stop could only be justified by the Vehicle Code violation, we alternatively hold that the trial court correctly determined that the detention was not unduly prolonged under the circumstances as they developed.

"There is no fixed time limit for establishing the constitutionality of an investigatory detention. Rather, such a detention will be deemed unconstitutional 'when extended beyond what is reasonably necessary under the circumstances that made its initiation permissible. [Citation.]' (*People v. Russell* (2000) 81 Cal.App.4th 96, 101.)" (*Gomez*, *supra*, 117 Cal.App.4th at pp. 537-538.)

We agree with the trial court's conclusion that the 26 minute period between the stop and the positive alert by the police dog was not unconstitutionally prolonged. When defendant was pulled over, he denied being on probation or parole. Officer Ward conducted a license check and determined defendant was on probation for driving under the influence. Officer Ward noticed the overturned cup and liquid on the floor of defendant's vehicle. Defendant's eyes were red and watery. Officer Ward told defendant

9

he was on probation and asked for permission to search the vehicle, which was granted. Officer Ward was entitled to take the time to conduct that consensual search, during which she noticed missing screws and exposed plastic, causing her to suspect the vehicle had hidden compartments, which justified further investigation. Officer Ward proceeded to conduct the field sobriety tests on defendant, which the trial court concluded were not done quickly but were not unduly delayed. Detective Bruce arrived with his dog while the field sobriety tests were still being administered, and his dog quickly alerted to narcotics in the car.

"Courts have, for example, declined in particular circumstances to base a finding of de facto arrest on evidence that the officers . . . held him or her for more than a minimal amount of time (*United States v. Sharpe* (1985) 470 U.S. 675, 686-688 [20 minutes]; *In re Carlos M.* [(1990)] 220 Cal.App.3d [372,] 384, 385 [30 minutes]; *United States v. Place* (1983) 462 U.S. 696, 709-710 ['we decline to adopt any outside time limitation' (although 90 minutes would be too long in this case)]])." (*People v. Soun* (1995) 34 Cal.App.4th 1499, 1517 [30 minute detention to investigate homicide not unduly prolonged].) Given the totality of the circumstances in this case, the investigation was not unduly prolonged.

## DISPOSITION

The judgment is affirmed.

KRIEGLER, J.

We concur:

TURNER, P. J.                    BAKER, J.

10