[No. G042010. Fourth Dist., Div. Three. Sept. 21, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFREDO TORRES TORRES, Defendant and Appellant.

**COUNSEL**

Michael Ian Garey for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**IKOLA, J.**—Defendant Alfredo Torres Torres challenges his convictions for various drug-related offenses, possession of a firearm by a felon, and misdemeanor driving without a valid license. Before defendant pleaded guilty to all charges, the court denied his motions to set aside the information and suppress evidence. In each motion, defendant contended drugs seized from his truck and other evidence were the inadmissible fruits of an illegal traffic stop and inventory search. We agree, and reverse.

Initially, defendant is entitled to separate review of the denials of his motion to set aside and his motion to suppress. We publish to reaffirm this established proposition because neither party was able to find a case on point. We also clarify that each motion must be reviewed on the record as it existed when the court decided the motion.

Turning to the merits, the inventory search was unlawful because the prosecution did not show the police reasonably impounded defendant's truck pursuant to their community caretaking function. To the contrary, the record shows this was a pretextual inventory search conducted as a ruse for a criminal investigation. As such, and because no attempt has been made to justify the search as an investigatory search based upon probable cause, we reverse.

## FACTS

*The Impound and the Search*

An Orange County Sheriff's deputy patrolling in the City of Anaheim pulled over a pickup truck which had made an unsafe lane change and failed to signal a turn. The driver, who was defendant, parked in a stall in a public parking lot near a restaurant and got out of the truck. Defendant told the deputy he did not have a valid driver's license. The deputy obtained defendant's consent to search him, and found four cellular phones and $965. The deputy decided to impound the truck. He placed defendant in the back of the patrol car and waited for his partner to arrive. The deputy and his partner conducted an inventory search of the truck. They found 12 ounces of methamphetamine under the driver's seat and a pay/owe sheet in the backseat.

Deputies later searched defendant's home pursuant to a warrant. They found $133,074 in cash, nearly three pounds of methamphetamine, some cocaine, narcotics trafficking equipment, and a rifle.

*The First Motion to Suppress and the Preliminary Hearing*

Before the preliminary hearing, defendant filed a motion to quash and traverse the search warrant and suppress evidence. (Pen. Code, § 1538.5, subd. (f).)[1] He contended the traffic stop was "clearly pretextual" and unreasonable; the impound and inventory search was "a ruse" and unlawful; and the search warrant was "tainted" by the unlawful detention and search.

The court denied the motion after hearing testimony at the preliminary hearing. The deputy testified he had told defendant he would cite defendant for driving without a valid license (Veh. Code, § 12500, subd. (a)) and impound the truck pursuant to Vehicle Code section 14602.6, subdivision (a)(1) (authorizing impoundment of vehicles being driven by unlicensed drivers). The deputy testified his department has a policy governing inventory searches: "[Y]ou can search the vehicle, if you are impounding it."

The deputy made several concessions on cross-examination, however. He conceded a narcotics officer had previously asked him to "develop some basis for stopping" defendant. The deputy agreed with defense counsel that he had decided to impound the truck "in order to facilitate an inventory search." And he agreed he was "basically using the inventory search as the means to go look for whatever narcotics-related evidence might be in the [truck]." He never started writing a citation for driving without a license.

The People filed an information against defendant, charging him with seven counts. Defendant was charged with two counts of possession for sale of methamphetamine (Health & Saf. Code, § 11378) and one count each of transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), possession of cocaine for sale (Health & Saf. Code, § 11351), possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)), possession of drug sale proceeds exceeding $100,000 (Health & Saf. Code, § 11370.6, subd. (a)), and misdemeanor driving without a valid license (Veh. Code, § 12500, subd. (a)). The People alleged defendant suffered a prior felony conviction for possession of a controlled substance for sale. (Pen. Code § 1203.07, subd. (a)(11); Health & Saf. Code, § 11370.2, subds. (a), (c).)

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

*The Motion to Set Aside and the Renewed Motion to Suppress*

Defendant moved to set aside the information. (See § 995.) He again contended the detention and search were unlawful and the search warrant was invalid. The court denied the motion. It noted: "[I]f there had been an inventory search that was in fact a pretext search, but it was otherwise established to be valid, the Court believes that the case law supports the validity of that search . . . ."

Defendant renewed his motions to quash the warrant and suppress evidence. (See § 1538.5, subd. (i) [right to renew suppression motion].) The court conducted a hearing on the motion, at which the deputy provided additional testimony.

On direct examination, the deputy reiterated he pulled defendant over for traffic violations and impounded the truck when defendant admitted having no license. He further testified his department has a policy giving an officer discretion to impound a vehicle driven by an unlicensed driver. The department trained him to exercise his discretion based on several factors: "Depending on the person, if they have ever been issued a license or not. How long they have been in the country," as well as "for safety reasons. I wouldn't want the person who doesn't have a license to get back into the vehicle after I issued them a citation[, with] [m]e leaving the vehicle in their control." He stated he applied these factors in deciding to impound defendant's truck. He also claimed he filled out a "C.H.P. 180" form detailing the inventory.

On cross-examination, the deputy again made several concessions. He conceded another officer had filled out the C.H.P. (California Highway Patrol) 180 inventory form—his testimony that he had done so personally "was wrong." He conceded he did not cite defendant for driving without a license. And he again agreed he made the impound decision "in order to facilitate an inventory search" to "look for some legal basis to try to search the [truck]" "for whatever narcotics-related evidence might be in the [truck]." The deputy also agreed he omitted any reference to the narcotics officer in his police report because he "believed at that time that [he] could write [his] police report to make it look like this was just a traffic stop and that nobody would ever find out that the narcotics officer had actually given [him] some kind of a suggestion."

The court denied the motions. It acknowledged defendant's argument would be "right if the only evidence [about the deputy's decision] is hey, I'm going to impound this thing because I want to look for drugs with no other valid reason. [¶] But both of you [(defense counsel and the deputy)] went

back and forth on this. [¶] And the officer did render to the court independent reasons, nonpretext in nature, which explain why he would impound [and] inventory."

Defendant pleaded guilty to all counts and admitted the prior felony conviction. The court sentenced him to a total term of three years in state prison.

## DISCUSSION

*Defendant May Separately Appeal from the Denials of Both Trial Court Motions*

Defendant seeks separate review of the denials of his motion to set aside and his renewed motion to suppress. The Attorney General contends defendant is entitled to appeal only the denial of the renewed motion to suppress, noting this court already denied writ review of the denial of the motion to set aside. And the Attorney General asserts, "[a]ppellant has cited no authority, and respondent has found none, that would allow, much less require, this Court to separately review the orders ruling against appellant on the search and seizure issues." To resolve this dispute, we begin with a short recap of search and seizure procedural law.

At the preliminary hearing, a defendant may move to suppress evidence obtained from an illegal search or seizure. (§ 1538.5, subd. (f).) But doing so will not preserve the issue for appeal. (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896 [150 Cal.Rptr. 910, 587 P.2d 706] (*Lilienthal*).) To do that, the defendant may renew the motion to suppress in the trial court, where he is entitled to a hearing de novo. (§ 1538.5, subd. (i).)

The defendant may also preserve a search and seizure challenge for appeal by moving to set aside the information for lack of probable cause. (See § 995, subd. (a)(2)(B) [motion to set aside]; see also § 1538.5, subd. (m) [despite guilty plea, defendant may challenge conviction arising from an illegal search or seizure if issue raised in a motion filed pursuant to "this section [or] Section[] . . . 995"].) The California Supreme Court has rejected the claim that search and seizure issues "must be raised in the superior court by a motion to suppress rather than a section 995 motion." (*Lilienthal, supra,* 22 Cal.3d at p. 896.) "Although a defendant has the right to a de novo hearing in the superior court on the suppression question under subdivision (i) of section 1538.5, we see no reason why he should be required to raise the

matter in that way if he is satisfied with having the matter reviewed under the standards governing a section 995 motion." (*Lilienthal, supra,* 22 Cal.3d at p. 897, fn. 5.)

Thus, as the parties agree, defendant had the right to challenge the legality of the traffic stop and inventory search by a motion to set aside or a motion to suppress. The salient issue is whether defendant could do *both*—and obtain separate appellate review of each ruling. The parties found no authority on point.

A case on all fours exists—*People v. Schoennauer* (1980) 103 Cal.App.3d 398 [163 Cal.Rptr. 161] (*Schoennauer*). The procedural posture of that case mirrors ours. "[A]ppellant moved at the preliminary hearing to suppress the evidence pursuant to section 1538.5, subdivision (f). His motion was denied. He then moved in the superior court, pursuant to section 995, to set aside the information for lack of probable cause on the ground that the evidence is the product of an illegal search. Appellant simultaneously filed a motion in the superior court to suppress the evidence pursuant to section 1538.5, subdivision (i). After separate hearings, both motions were denied." (*Schoennauer,* at p. 404.)

■ The *Schoennauer* court held the defendant was entitled to file both motions and obtain separate appellate review of each. It found nothing in the Penal Code to suggest that "the determination of one motion precludes the determination of the other motion." (*Schoennauer, supra,* 103 Cal.App.3d at p. 405.) Each motion entails different procedures. "Section 995 requires the superior court to determine, after review of the preliminary examination transcript, whether there was any substantial evidence to support the magistrate's ruling. [Citations.] A section 1538.5 motion enables the accused to have a de novo hearing in the superior court and requires the court to independently weigh the evidence." (*Schoennauer,* at p. 404.) And "[i]f both motions may be presented during the trial court proceedings, then it necessarily follows that appellate review of the disposition of each motion is available." (*Id.* at p. 405.) "[B]oth motions, if properly brought in the trial court, may be reviewed simultaneously on appeal." (*Id.* at pp. 405–406; accord, *People v. Sandoval* (1985) 164 Cal.App.3d 958, 961, fn. 1 [211 Cal.Rptr. 1] [citing *Schoennauer*].)

Accordingly, defendant is entitled to separate review of the rulings on his motion to set aside and his renewed motion to suppress. In its analysis, *Schoennauer* did not expressly segregate evidence from the preliminary hearing from evidence at the hearing on the renewed motion to suppress. But this evidentiary differentiation is necessary here to separately review defendant's two motions, which were decided on different records.

Thus, we will look for substantial evidence at the preliminary hearing to support the denial of the motion to set aside, i.e., that substantial evidence supported the magistrate's ruling. (See *Schoennauer, supra*, 103 Cal.App.3d at p. 404.) And we will look for substantial evidence in the record of the de novo hearing—including the deputy's additional testimony—to support the denial of the renewed motion to suppress. (See *ibid.*; see also *People v. Logsdon* (2008) 164 Cal.App.4th 741, 744 [79 Cal.Rptr.3d 379] (*Logsdon*).) For each ruling, "[o]nce the facts are determined, we then decide de novo whether the search or seizure was reasonable under established constitutional principles." (*Logsdon*, at p. 744.) Each motion raised the same basic issues: (1) was the traffic stop a lawful detention, and (2) was the inventory search a lawful search. We address those issues below.

*The Traffic Stop Was Reasonable*

■ A traffic stop constitutes a detention under the Fourth Amendment. (*Whren v. United States* (1996) 517 U.S. 806, 809–810 [135 L.Ed.2d 89, 116 S.Ct. 1769] (*Whren*).) "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred" (*id.* at p. 810) or where they can at least " 'point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity' " (*Logsdon, supra*, 164 Cal.App.4th at p. 744). "[T]he constitutional reasonableness of traffic stops" does *not* "depend[] on the actual motivations of the individual officers involved." (*Whren*, at p. 813.)

■ "There is no fixed time limit for establishing the constitutionality of an investigatory detention. Rather, such a detention will be deemed unconstitutional 'when extended beyond what is reasonably necessary under the circumstances that made its initiation permissible. [Citation.]' [Citation.] The issue then 'is whether the police diligently pursued a means of investigation reasonably designed to confirm or dispel their suspicions quickly.' " (*People v. Gomez* (2004) 117 Cal.App.4th 531, 537–538 [12 Cal.Rptr.3d 398] (*Gomez*).) An officer may detain a driver for the time "reasonably necessary to perform the duties incurred by virtue of the stop. [Citation.] [¶] Thus, an officer may order the driver out of the car [citation], ask for and examine the motorist's driver's license and the car registration, discuss the violation and listen to any explanation, write a citation, and obtain the driver's promise to appear." (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926–927 [21 Cal.Rptr.2d 785].)

During the traffic stop, an officer may " 'take such steps as [are] reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of the stop.' " (*People v. Soun* (1995) 34 Cal.App.4th 1499, 1519 [40

Cal.Rptr.2d 822] (*Soun*).) Reasonable steps may include temporary handcuffing and transportation in a police car. (*Id.* at pp. 1516–1517; see also *In re Carlos M.* (1990) 220 Cal.App.3d 372, 385 [269 Cal.Rptr. 447] (*Carlos M.*).)

When a detention becomes overly intrusive—by becoming unreasonably prolonged or involving unreasonable protective measures, for example—it evolves into a de facto arrest. (*Gomez, supra,* 117 Cal.App.4th at p. 538.) An arrest must be justified by probable cause. (*Ibid.*)

Here, substantial evidence showed the traffic stop was lawful. The deputy testified at each hearing he saw defendant commit traffic offenses. The deputy's subjective motivation for watching defendant's truck is irrelevant. (*Whren, supra,* 517 U.S. at p. 813.) The 10 to 15 minutes that elapsed between the initial stop and the inventory search was not unreasonable. (See *People v. Gallardo* (2005) 130 Cal.App.4th 234, 238 [29 Cal.Rptr.3d 455] ["a very few minutes" not unreasonable duration for traffic stop].) Nor was it unreasonable for the deputy to secure his personal safety by placing defendant in the patrol car pending the inventory search. (Cf. *Soun, supra,* 34 Cal.App.4th at p. 1516; *Carlos M., supra,* 220 Cal.App.3d at p. 385.) The detention was not so unreasonable as to constitute a de facto arrest. (See *People v. Stier* (2008) 168 Cal.App.4th 21, 27–28 [85 Cal.Rptr.3d 77].)

*The Inventory Search Was Unlawful Because Impounding the Truck Served No Community Caretaking Function*

Defendant contends the search was a prohibited, "pretextual" inventory search. He notes the deputy conceded at the hearings below that narcotics officers had asked him to manufacture a reason to detain and search the truck. Moreover, the deputy agreed he decided to impound the truck "in order to facilitate an inventory search" to look "for whatever narcotics-related evidence might be in the [truck]." Defendant concludes the inventory search must be condemned as a ruse for conducting an investigatory search without probable cause.

■ Defendant's challenge to the inventory search turns on the reasonableness of the truck's impounding. (See *South Dakota v. Opperman* (1976) 428 U.S. 364, 373 [49 L.Ed.2d 1000, 96 S.Ct. 3092] (*Opperman*) [authorizing inventory searches of vehicles "impounded or otherwise in lawful police custody"].) "[W]e focus on the purpose of the impound rather than the purpose of the inventory." (*People v. Aguilar* (1991) 228 Cal.App.3d 1049, 1053 [279 Cal.Rptr. 246] (*Aguilar*).) "[A]n inventory search conducted pursuant to an unreasonable impound is itself unreasonable." (*People v. Williams* (2006) 145 Cal.App.4th 756, 761 [52 Cal.Rptr.3d 162] (*Williams*).)

The purpose behind the decision to impound is crucial because of the reason for condoning inventory searches of impounded cars. "In the interests

of public safety and as part of what the Court has called 'community caretaking functions,' [citation], automobiles are frequently taken into police custody." (*Opperman, supra,* 428 U.S. at p. 368.) "When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, [citation]; the protection of the police against claims or disputes over lost or stolen property, [citation]; and the protection of the police from potential danger, [citation]." (*Id.* at p. 369.) "[T]his Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." (*Id.* at p. 373.)

■ Police officers may exercise discretion in determining whether impounding a vehicle serves their community caretaking function, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." (*Colorado v. Bertine* (1987) 479 U.S. 367, 375 [93 L.Ed.2d 739, 107 S.Ct. 738] (*Bertine*).) Statutes authorizing impounding under various circumstances "may constitute a standardized policy guiding officers' discretion" (*Williams, supra,* 145 Cal.App.4th at p. 763), though "statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure" (*id.* at p. 762).

■ The decision to impound the vehicle must be justified by a community caretaking function "other than suspicion of evidence of criminal activity" (*Bertine, supra,* 479 U.S. at p. 375) because inventory searches are "conducted in the absence of probable cause" (*Whren, supra,* 517 U.S. at p. 811). "[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment. [Citations.] The policies behind the warrant requirement are not implicated in an inventory search, [citation], nor is the related concept of probable cause: [¶] 'The standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures. . . . The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations.' " (*Bertine, supra,* 479 U.S. at p. 371.)

■ Just as inventory searches are exceptions to the probable cause requirement, they are also exceptions to the usual rule that the police officers' "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." (*Whren, supra,* 517 U.S. at p. 813.) We have "never held, *outside the context of inventory search . . .* that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment." (*Id.* at p. 812, italics added.) Instead, courts will explore police

officers' subjective motivations for impounding vehicles in inventory search cases, even when some objectively reasonable basis exists for the impounding. In *Opperman, supra,* 428 U.S. 364, the police impounded a car that had been "illegally parked for an extended period" (*id.* at p. 375) and contained "a number of valuables inside" (*id.* at pp. 375–376) "in plain view" (*id.* at p. 375). Yet the court stressed "there is no suggestion whatever" that the inventory search "was a pretext concealing an investigatory police motive." (*Id.* at p. 376.) In *Bertine,* the police impounded a van after arresting the driver for driving under the influence. (*Bertine, supra,* 479 U.S. at p. 368.) The alternative of parking and locking the van was not feasible. (*Id.* at p. 376.) Still, the court noted "there was no showing that the police . . . acted in bad faith or for the sole purpose of investigation" (*id.* at p. 372) and "no showing that the police chose to impound [the] van in order to investigate suspected criminal activity" (*id.* at p. 376).

Thus, as the United States Supreme Court has explained, inventory search cases apply "the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.' " (*Florida v. Wells* (1990) 495 U.S. 1, 4 [109 L.Ed.2d 1, 110 S.Ct. 1632] (*Wells*) [evidence in suitcase in impounded car should be suppressed because state highway patrol lacked standardized policy on opening closed containers found in inventory searches].)

And so courts invalidate inventory searches when the police impound vehicles without serving a community caretaking function, suggesting the impoundings were pretexts for conducting investigatory searches without probable cause. (See, e.g., *Williams, supra,* 145 Cal.App.4th at p. 763; *Aguilar, supra,* 228 Cal.App.3d at pp. 1053–1054.)

In *Williams,* the police stopped a car because the driver was not wearing a seatbelt, and arrested him pursuant to an outstanding arrest warrant. (*Williams, supra,* 145 Cal.App.4th at p. 759.) A statute authorized impounding the car because the driver had been arrested. (*Id.* at p. 762, citing Veh. Code, § 22651, subd. (h)(1).) Despite this statutory authorization, *Williams* noted, "The impoundment must still serve a community caretaking function." (145 Cal.App.4th at p. 763.) But the prosecution had "made no showing that removal of the car from the street furthered a community caretaking function." (*Id.* at p. 763.) "The car was legally parked at the curb in front of [the defendant's] home. The possibility that the vehicle would be stolen, broken into, or vandalized was no greater than if [the officer] had not stopped and arrested [the defendant] as he returned home. In this regard, it is significant that other cars were parked on the street and that it was a residential area. The prosecution made no showing that the car was blocking a driveway or

crosswalk, or that it posed a hazard or impediment to other traffic." (*Id.* at pp. 762–763.) "By [the officer's] own admission, he impounded [the defendant's] car simply because he was taking [the defendant] into custody. [The officer] did not assert any community caretaking justification for the impoundment, and in light of the evidence at the hearing, no such justification existed." (*Id.* at p. 763.)

In *Aguilar*, the police stopped a car for an illegal stop and an unsignalled turn, and arrested the driver for driving without a valid license. (*Aguilar, supra*, 228 Cal.App.3d at p. 1051.) The officer "testified at the preliminary hearing he followed [the defendant's] car because he suspected criminal activity and wanted to investigate; he intended to stop the car as soon as he saw a traffic violation; [and] one of the reasons he had the car towed, i.e., impounded, was so he could look in the trunk (he never gave any other reasons for the impound)." (*Ibid.*) The court invalidated the inventory search. "It is clear from [the officer's] testimony that the arrest and the impound were for 'an investigatory police motive.' As to the inventory, although [the officer] testified he was required to inventory every vehicle he impounded, this does not justify the inventory, but merely narrows the inquiry to the impound and the events leading thereto." (*Id.* at p. 1052.) The officer "testified one, if not the only, purpose of the impound was to conduct an investigatory search. Accordingly, the impound and the resulting search were unreasonable . . . ."[2] (*Aguilar*, at p. 1053.)

Here, the impound and inventory search were similarly unreasonable and the motion to set aside was wrongly denied. (See *Schoennauer, supra*, 103 Cal.App.3d at p. 405 [separate review for order denying motion to set aside].) The relevant issue is the deputy's motive for impounding the truck—did he impound the truck to serve a community caretaking function or as a pretext for conducting an investigatory search? The record on that motion—namely, the preliminary hearing transcript—shows an investigatory motive. The deputy testified he decided to impound the truck "in order to facilitate an inventory search" because narcotics officers had asked him to "develop some basis for stopping" defendant. The deputy agreed he "basically us[ed] the inventory search as the means to go look for whatever narcotics-related evidence might be in the [truck]." (Cf. *Opperman, supra*, 428 U.S. at p. 376 [inventory search may not be "a pretext concealing an investigatory police

---

[2] See also *People v. Valenzuela* (1999) 74 Cal.App.4th 1202, 1209 [88 Cal.Rptr.2d 707] (invalidating taxicab inspection search because the stop "was a pretext for [the police officer's] true motive: to contact [the defendant]"); accord, *U.S. v. Hellman* (9th Cir. 1977) 556 F.2d 442, 444 ("[I]t is clear from the testimony of the searching officer that the citation, the impounding and the inventorying all were for 'an investigatory police motive.' This alone is sufficient to conclude that the warrantless search of the car was unreasonable.").

motive"]; *Bertine, supra,* 479 U.S. at p. 376 [inventory search improper when police officers impound vehicle "in order to investigate suspected criminal activity"].)

 To be sure, the deputy's preliminary hearing testimony also suggested a nonpretextual ground to impound defendant's truck. The deputy testified he told defendant he would impound the truck pursuant to Vehicle Code section 14602.6, which authorizes the impounding of vehicles driven by unlicensed drivers. But "statutory authorization [to impound a vehicle] does not, in and of itself, determine the constitutional reasonableness" of an inventory search. (*Williams, supra,* 145 Cal.App.4th at p. 762.) The deputy did not claim defendant's lack of a license was the sole motivation for the impounding. (Cf. *Aguilar, supra,* 228 Cal.App.3d at p. 1053 [invalidating inventory search because the officer "testified one, if not the only, purpose of the impound was to conduct an investigatory search"].) He did not offer at the preliminary hearing any standardized policy to impound all vehicles of unlicensed drivers. (Cf. *Wells, supra,* 495 U.S. at p. 3.) And he did not offer any community caretaking function served by impounding defendant's truck. The prosecution failed to show the truck was illegally parked, at an enhanced risk of vandalism, impeding traffic or pedestrians, or could not be driven away by someone other than defendant. (Cf. *Williams, supra,* 145 Cal.App.4th at pp. 762–763.) Nor did the prosecution offer any justification for the search other than an inventory search subsequent to impounding.[3] The motion to set aside the information should have been granted.[4]

---

[3] Neither the prosecution below nor the Attorney General on appeal contend the search was supported by probable cause or any exception to the warrant requirement—such as a search incident to arrest (see generally *Arizona v. Gant* (2009) 556 U.S. ___, ___ [173 L.Ed.2d 485, 129 S.Ct. 1710, 1719] [limits on searches incident to arrest])—other than the exception for inventory searches.

[4] The Attorney General contends in a rehearing petition that the ruling on the renewed motion to suppress cured any error in the ruling on the motion to set aside. (See *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941] [prejudice required to reverse for preliminary hearing irregularities]; *People v. Mardian* (1975) 47 Cal.App.3d 16, 37 [121 Cal.Rptr. 269] ["Any errors made by a magistrate at a preliminary hearing in failing to fully consider a defendant's motion to suppress evidence may be *cured* by a subsequent, correct determination of the issue in the superior court."].) We question whether a correct ruling on a renewed motion to suppress will *always* cure error in the prior ruling on the motion to set aside. The hearing on the renewed motion is not fully de novo. The evidence at this hearing "shall be limited to the transcript of the preliminary hearing and to evidence that could not reasonably have been presented at the preliminary hearing, except that the people may recall witnesses who testified at the preliminary hearing." (§ 1538.5, subd. (i).) And "the findings of the magistrate shall be binding on the court as to evidence or property not affected by evidence presented at the special hearing." (*Ibid.*) Thus, an error in the ruling on the motion to set aside may persist to taint the ruling on the renewed motion.

In any event, the ruling on the renewed motion here did not cure any error because it was likewise incorrect. In his additional testimony, the deputy did not establish a community caretaking function warranting the impoundment of defendant's truck. He did not explain why

*The Unlicensed Driver Cases Can Be Distinguished*

The Attorney General challenges this conclusion, urging us to excuse the concededly investigatory motive for the inventory search and instead embrace the objectively reasonable grounds to impound the truck—defendant was unlicensed.

 But the United States Supreme Court has instructed otherwise. "[W]e never held, *outside the context of inventory search . . .* , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment . . . ." (*Whren, supra,* 517 U.S. at p. 812, italics added.) Objective grounds existed to impound the vehicles in *Opperman* and *Bertine,* yet the court still examined the police officer's subjective motivations for impounding. (See *Opperman, supra,* 428 U.S. at p. 376; *Bertine, supra,* 479 U.S. at pp. 372, 376.) Inventory search jurisprudence *presumes* some objectively reasonable basis supports the impounding. The relevant question is whether the impounding was subjectively motivated by an improper investigatory purpose.

And so the cases upholding inventory searches of impounded cars driven by unlicensed drivers stress one or both of two factors, neither of which is present here: (1) the need to impound the car to serve some community caretaking function, and (2) the absence of pretext.

In the leading case of *People v. Benites* (1992) 9 Cal.App.4th 309 [11 Cal.Rptr.2d 512], the police officer impounded a van after learning the driver and passenger had suspended licenses. (*Id.* at p. 315.) The court upheld the ensuing inventory search because "[t]he impoundment decision was reasonable under the circumstances": It was "very late at night," the van was three miles from town on "a dark, lonely and isolated stretch of road" where it "could be vandalized," "the passenger also lacked a valid license," and "there was the possibility that [the defendant] would simply drive off once [the officer] left." (*Id.* at p. 326.) The court noted, "the officer's discretion to impound is clearly based on factors other than using it as a pretext to engage in a search for criminal activity." (*Id.* at p. 327.)

In *People v. Green* (1996) 46 Cal.App.4th 367 [54 Cal.Rptr.2d 12], the police officers "arrested [the defendant] for driving without a driver's license in violation of Vehicle Code section 12500. The officers impounded the vehicle as there was no other person with a valid license present to take control of the automobile while defendant was taken to jail." (*Id.* at p. 373.) The court upheld the inventory search, noting, "[t]here is no indication that

---

the truck could not be left where it was, or why another licensed driver could not be found to move it. Instead, the deputy again conceded he impounded the truck "in order to facilitate an inventory search" "for whatever narcotics-related evidence might be in the [truck]."

the inventory search of the car was merely a 'ruse' to try to discover evidence of criminal activity . . . ." (*Id.* at p. 374.)

In *People v. Steeley* (1989) 210 Cal.App.3d 887 [258 Cal.Rptr. 699], the police officer cited the defendant for driving with a revoked license and impounded the car. (*Id.* at pp. 889–890.) The court upheld the subsequent inventory search. "It was not unreasonable for [the officer] to conclude that the appropriate way to protect the vehicle was impoundment," as "there was no other licensed driver, the car was blocking a driveway and [the defendant] was not the registered owner of the vehicle." (*Id.* at p. 892.)

And in *People v. Burch* (1986) 188 Cal.App.3d 172 [232 Cal.Rptr. 502], "[t]he officer testified it was his regular procedure upon citing a driver for violation of Vehicle Code section 14601 [for driving with a suspended license] to have the car towed so as to prevent the driver from simply getting back into his vehicle and driving away." (*Id.* at p. 180.) The court noted in upholding the inventory search, "there is no credible evidence the taking of an inventory was simply a 'ruse' to justify an investigatory search for criminal evidence." (*Ibid.*)

These cases do not alter our analysis because, unlike these cases, here the record shows a concededly investigatory motive and no community caretaking function. The deputy did not testify defendant's truck was isolated, at risk of vandalism, or blocking a driveway. Nor did he testify no one could come to pick up the truck. Rather, the deputy candidly stated he impounded the truck as a pretext for searching for narcotics evidence.

Federal cases underscore the impounding of a vehicle driven by an unlicensed driver must be supported by some community caretaking function other than temporarily depriving the driver of the use of the vehicle. In *U.S. v. Caseres* (9th Cir. 2008) 533 F.3d 1064, the court doubted "that *Benites* stands for [the] proposition" "that impounding an unlicensed driver's car to prevent its continued unlawful operation is itself a sufficient community caretaking function." (*Id.* at p. 1075.) And in *Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d 858, the court cautioned that if the community caretaking function extended so broadly as to include the deterrence of future illegal activity, it "would expand the authority of the police to impound regardless of the violation, instead of limiting officers' discretion to ensure that they act consistently with their role of 'caretaker of the streets.' " (*Id.* at p. 866.)

In sum, the inventory search was unlawful because defendant's truck was concededly impounded for the investigatory motive of looking for criminal evidence. This impound and inventory search fall within the exact type of "pretext concealing an investigatory police motive" (*Opperman, supra,* 428 U.S. at p. 376) and "ruse for a general rummaging in order to discover incriminating evidence" (*Wells, supra,* 495 U.S. at p. 4) that violate the Fourth Amendment.

## DISPOSITION

The judgment is reversed. The matter is remanded with directions for the court to vacate its order denying the motion to set aside the information and issue a new order granting the motion.

Sills, P. J., and Aronson, J., concurred.

A petition for a rehearing was denied October 21, 2010, and the opinion was modified to read as printed above.