Filed 11/14/13  P. v. Coronado CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EVER ANTONIO CORONADO,<br><br>    Defendant and Appellant. | F065161<br><br>(Super. Ct. No. MF10000A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Gordon B. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Levy, Acting P.J., Cornell, J. and Peña, J.

## INTRODUCTION

Defendant Ever Antonio Coronado was pulled over by the California Highway Patrol (CHP) for towing another vehicle with a rope on a highway and for traveling at more than 70 miles per hour. Neither defendant nor his sister operating the towed vehicle had a driver's license. The officer intended to issue both defendant and his sister citations for driving without a valid driver's license and to impound both vehicles. Prior to towing the vehicles from the scene, inventory searches were conducted. In the vehicle operated by defendant, two large bags of marijuana were found in the trunk. Defendant was then arrested and charged accordingly.

In a motion to suppress evidence, defendant challenged the legality of the impoundment and resulting search. The trial court denied his motion. Thereafter, defendant pled no contest to one count of transporting marijuana in violation of Health and Safety Code section 11360, subdivision (a). On appeal, defendant contends the vehicle he was operating should not have been impounded, and therefore, the inventory search of the vehicle was unreasonable and unconstitutional. We affirm.

## FACTS[1]

On March 7, 2012, at about 5:30 p.m., CHP Officer Jason Blais responded to a call from dispatch pertaining to a vehicle towing another vehicle upon Highway 58 east of Highway 14 in Kern County. Upon locating the vehicle, the officer noted the vehicles were traveling about 70 miles per hour, and the lead vehicle was pulling a second vehicle with a rope; the two vehicles were about three feet apart. The rear vehicle was weaving back and forth. Blais then initiated a traffic stop.

Blais contacted defendant, the driver of the lead car, a Dodge Avenger. Defendant indicated he was towing the other vehicle—a Toyota Camry—to Boron. He did not have a driver's license or identification. It was later confirmed that defendant was licensed

---

[1]The facts are taken from the testimony offered at the hearing on the motion to suppress evidence.

neither in California nor in Nevada where he resided. Next, Blais discovered that defendant's sister Miriam Alvarado was operating the second or towed vehicle. Like defendant, she did not possess a valid driver's license in either California or Nevada. As a result, Blais testified that because neither driver had a valid driver's license, he determined that both vehicles would be impounded. The officer called for tow trucks and explained to defendant that the vehicles would be impounded.

Defendant's wife Jacqueline Flores was a passenger in the lead vehicle. She had a valid Nevada driver's license. Blais did not recall defendant asking him if his wife could drive the Dodge, but he may have done so.

Blais and another CHP officer conducted inventory searches of both the Dodge and the Toyota. As a result of that search, two large bags of marijuana were located in the Dodge's trunk. Defendant was then arrested.

## DISCUSSION

Defendant contends that impounding the Dodge Avenger was not an exercise of a caretaking function, nor pursuant to any protocol, and thus his federal Fourth Amendment rights against unreasonable search and seizure were violated. The People contend the trial court properly denied the motion to suppress evidence because the applicable statute authorizes the impoundment and, in any event, the officer's actions also amount to an exercise of his community caretaking function.

### *Legal Principles*

Vehicle Code section 22651 provides, in pertinent part, that a

"peace officer … may remove a vehicle located within the territorial limits in which the officer … may act, under the following circumstances:  [¶] … [¶] (p) When the peace officer issues the driver of a vehicle a notice to appear for a violation of Section 12500, 14601, 14601.1, 14601.2, 14601.3, 14601.4, 14601.5, or 14604 and the vehicle is not impounded pursuant to Section 22655.5."

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees the right to be free of unreasonable searches and seizures. (U.S. Const., 4th Amend.; *People v. Camacho* (2000) 23 Cal.4th

3.

824, 829-830 (*Camacho*).)  Impounding a vehicle is a seizure within the meaning of the Fourth Amendment if "'there is some meaningful interference with an individual's possessory interests in that property.'"  (*Soldal v. Cook County* (1992) 506 U.S. 56, 61.)

Our review of issues related to the suppression of evidence derived from police searches and seizures is governed by federal constitutional standards.  (*Camacho*, *supra*, 23 Cal.4th at p. 830; *People v. Bradford* (1997) 15 Cal.4th 1229, 1291.)  On review of the trial court's denial or grant of a suppression motion, we defer to the trial court's factual findings if supported by substantial evidence, but exercise our independent judgment to determine whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment.  (*Camacho*, *supra*, at p. 830; *People v. Glaser* (1995) 11 Cal.4th 354, 362.)

"[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment."  (*Colorado v. Bertine* (1987) 479 U.S. 367, 371.)  In *South Dakota v. Opperman* (1976) 428 U.S. 364, the majority observed that police frequently impound vehicles as part of their "community caretaking functions," and an inventory search of a vehicle, once lawfully impounded pursuant to this function, furthers three legitimate purposes: the protection of the vehicle owner's property while in police custody, the protection of police against claims of loss or damage to items within the vehicle, and the protection of police from potentially dangerous items that might be within the vehicle.  (*Id*. at pp. 368-369.)  The *Opperman* court emphasized that the critical issue under the Fourth Amendment is whether a search is unreasonable, and reasonableness must be determined under all the circumstances.  (*Id.* at pp. 372-373.)  The majority concluded that an inventory search of a locked vehicle, conducted pursuant to "standard police procedures" after the vehicle was lawfully impounded, was not "unreasonable."  (*Ibid*.)

***The Trial Court's Ruling***

The trial court issued a written order, denying the motion to suppress:

"Motion to suppress evidence is denied.

4.

"Vehicle Code section 22651 states, 'A peace officer … may remove a vehicle located within the territorial limits in which the officer or employee may act, under the following circumstances:

"'(p) When the peace officer issues the driver of the vehicle a notice to appear for a violation of Section 12500 … and the vehicle is not impounded pursuant to Section 22655.5.'

"In *Colorado v. Bertine* (1987) 479 U.S. 367, the Court noted:

"'Bertine finally argues that the inventory search of his van was unconstitutional because departmental regulations gave the police officers discretion to choose between impounding his van and parking and locking it in a public parking place. The Supreme Court of Colorado did not rely on this argument in reaching its conclusion, and we reject it. Nothing in *Opperman* or [*Illinois v.*] *Lafayette* [(1983) 462 U.S. 367] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Here, the discretion afforded the Boulder police was exercised in light of standardized criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it. There was no showing that the police chose to impound Bertine's van in order to investigate suspected criminal activity. (*Id*. at 375-376).'

"Likewise, in the instant case, it is obvious that the officer did not choose to impound the vehicle in order to investigate suspected criminal activity. In fact, when watching the traffic cam video of the incident (defense exhibit B) it is quite clear that Officer [Blais] is very surprised when the second officer opens the trunk and finds the marijuana. Furthermore, in exercising his discretion to impound the vehicles, the officer was confronted with the fact that there were two vehicles, one of which was disabled, there were two unlicensed drivers operating the vehicles, and the one licensed driver was not operating the vehicle because, according to her husband 'it was too complicated.' The situation was further exacerbated by the fact that the vehicles were parked on the side of a busy freeway where large tractor trailers were passing by. Clearly the vehicles had to be moved from the side of the freeway. Officer [Blais] exercised his discretion to impound the vehicles so they could be safely moved from the area.

"The instant case is distinct from *People v. Williams* (2006) 145 Cal.App.4th [756] where … 'the car was legally parked in front of appellant's residence, appellant had a valid driver's license, … and [the officer] had no reason to believe appellant was not in lawful possession of

5.

the car.' (*Id*. at p. 762.) In *Williams* the officer could have safely left the car parked in front of appellant's residence. In the instant case, the cars had to be removed from the side of the freeway. While the officer had discretion to release one of the vehicles to the defendant's wife, he was not compelled to do so.

"In *People v. Steeley* (1989) 210 Cal.App.3d 887, the court noted that Vehicle Code section 22651(p) allowed an officer to remove a vehicle from a highway 'when the peace officer issues the driver of the vehicle a notice to appear for a violation of Section 12500, 14601 … **and there is no passenger in the vehicle who has a valid driver's license and authorization to operate the vehicle.**' (emphasis added) (*Id*. at p. 890.) However, 2012 Vehicle Code section 22651(p) does not include the section regarding a passenger who has a valid license. It is obvious the statute has been changed to provide more discretion to the officer in determining when to impound a vehicle. Officer [Blais] reasonably exercised his discretion to remove the two vehicles from the side of the freeway by having them impounded. His actions were reasonable under the circumstances." (Fn. omitted.)

*Analysis*

Here, Officer Blais conducted a traffic stop because defendant's vehicle was towing another vehicle upon the highway with a rope in excess of the applicable speed limit. The officer soon discovered that neither defendant nor the driver of the towed vehicle possessed valid driver's licenses. On that basis, the officer testified he decided to impound both vehicles.

"'There is little doubt that law enforcement authorities under certain conditions have the right, and often the duty, to impound a motor vehicle.' [Citation.] An officer may exercise discretion in deciding when to impound an automobile '"so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity…." [Citation.]' [Citation.] … Vehicle Code section 22651, subdivision (p), authorize[s] peace officers to impound a vehicle '[w]hen the peace officer issues the driver of a vehicle a notice to appear for a violation of Section 12500 [driving without a valid driver's license]….' This is a clear statement of the circumstances under which the Legislature determined that a police officer may impound a vehicle. Additional support is provided by *People v. Benites* [(1992)] 9 Cal.App.4th 309, 327-328 and *People v. Burch* (1986) 188 Cal.App.3d 172, 176, wherein the courts held that officers, acting pursuant to Vehicle Code section 22651, subdivision (p), in deciding to impound automobiles had

6.

followed standardized criteria within the meaning of *Colorado v. Bertine*[, *supra*,] 479 U.S. 367, 371." (*People v. Green* (1996) 46 Cal.App.4th 367, 372-373.)

Given the conditions facing Officer Blais—two unlicensed drivers and two vehicles, one of which was inoperable—the officer had the right, and in fact a duty with regard to the impaired vehicle, to impound the vehicles.

Defendant complains his "wife was licensed and could have driven the rental car" and, as a result, "there was no issue of securing the vehicle or removing it from being a potential hazard on the road." While defendant's wife apparently possessed a driver's license, Officer Blais was not required to offer to allow a passenger to drive the vehicle away after he determined its driver did not have a valid driver's license. In 1994, the California Legislature omitted language from Vehicle Code section 22651, subdivision (p) calling for peace officers to impound a vehicle where the driver lacks a valid driver's license and where no passenger in the vehicle has a valid driver's license. (Stats. 1994, ch. 1221, §§ 16, 17.) Therefore, since 1995, a peace officer may impound a vehicle when the peace officer issues the driver of a vehicle a notice to appear for a violation of Vehicle Code ection 12500 and the vehicle has not been impounded pursuant to section 22655.5. Here, Officer Blais issued a citation to defendant and to his sister for a violation of Vehicle Code section 12500. Officer Blais was not obligated by the Fourth Amendment to determine whether the other occupants of the vehicle could drive the rental car away. "The fact that there may be less intrusive means of protecting a vehicle and its contents does not render the decision to impound unreasonable." (*People v. Steeley*, *supra*, 210 Cal.App.3d at p. 892.)

Defendant claims there was "no evidence whatsoever that the agency had a protocol of any sort when making a determination whether or not to tow the vehicle." It is established that Vehicle Code section 22651 provides the required standardized criteria governing vehicular impoundment. (*People v. Green*, *supra*, 46 Cal.App.4th at p. 375; *People v. Benites*, *supra*, 9 Cal.App.4th at p. 327; *People v. Salcero* (1992) 6 Cal.App.4th 720, 723.) Moreover, the record reveals references to the protocol followed by the

7.

officer. After testifying that once he realized neither driver had a driver's license and that "both vehicles were going to be impounded," in response to the following question, "Per your protocol when you impound vehicles is there an inventory search that you do?" Officer Blais responded affirmatively. The officer also referenced his practice of calling for a tow truck for impound whenever a driver is found to be operating a vehicle without a license. Further, defense exhibit B, admitted during the hearing on the motion to suppress, reveals Officer Blais and the second officer referring to CHP form 180 pertaining to impoundment.

Officer Blais reasonably exercised his discretion according to standard criteria and protocol and in the absence of any suspicion of evidence of criminal activity. Defendant acknowledges the latter, and the record confirms as much.

This court further notes that the car being driven by defendant was a rental vehicle.[2] The vehicle was apparently rented by defendant's mother. Yet defendant's mother was not present and available to drive the rental car. No information exists in the record to indicate that defendant's wife was approved or permitted to operate the rental vehicle as per the rental agreement. As pointed out by the People, had Officer Blais permitted defendant's wife to drive the Dodge away, there is no reason to believe defendant or his sister, neither of whom possessed a driver's license, would not subsequently get behind the wheel. Defendant could not have been an approved driver of the rental car given the fact he was unlicensed, yet that did not deter him from driving it and using it as a tow truck.

We are not persuaded by defendant's citations to *People v. Williams*, *supra*, 145 Cal.App.4th 756 and *People v. Torres* (2010) 188 Cal.App.4th 775 in support of his arguments. Both cases are factually distinguishable. In *Torres*, the defendant did not have a valid driver's license when he was stopped for making an unsafe lane change and failing to signal a turn. The defendant consented to a search of his person whereupon the

---

[2]Dispatch reported that the rental car was owned by "Ean Holdings" in Tulsa, Oklahoma.

officer found four cellular phones and $965 in cash. The officer decided to impound the vehicle, placed the defendant in the back of the patrol vehicle, and conducted an inventory search that revealed methamphetamine and evidence of illegal drug sales. (*People v. Torres*, *supra*, 188 Cal.App.4th at p. 780.)

During the hearing on the motion to suppress, the officer asserted he impounded the vehicle because the defendant was driving without a valid driver's license, but he admitted a narcotics officer had asked him to find a reason to stop the defendant. The officer knew he had to impound the vehicle in order to search it. The officer admitted "he was 'basically using the inventory search as the means to go look for whatever narcotics-related evidence might be in the [vehicle].'" (*People v. Torres*, *supra*, 188 Cal.App.4th at p. 781.)

The defendant argued the inventory search was a ruse to search for narcotics related evidence. The appellate court described the issue as whether it was reasonable for the officer to impound the vehicle, noting "'[A]n inventory search conducted pursuant to an unreasonable impound is itself unreasonable.' [Citation.]" (*People v. Torres*, *supra*, 188 Cal.App.4th at p. 786.) According to the appellate court, "The purpose behind the decision to impound is crucial because of the reason for condoning inventory searches of impounded cars," which was to secure or protect the car and its contents. (*Id*. at pp. 786-787.) Accordingly, "[t]he decision to impound the vehicle must be justified by a community caretaking function 'other than suspicion of evidence of criminal activity' [citation] because inventory searches are 'conducted in the absence of probable cause' [citation]." (*Id*. at p. 787.) "Statutes authorizing impounding under various circumstances 'may constitute a standardized policy guiding officers' discretion' [citation], though 'statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure' [citation]." (*Ibid*.)

In applying these concepts, the appellate court described the relevant inquiry as the officer's motive for impounding the vehicle. (*People v. Torres*, *supra*, 188 Cal.App.4th at p. 789.) It concluded the record "shows an investigatory motive. The

9.

deputy testified he decided to impound the [vehicle] 'in order to facilitate an inventory search' because narcotics officers had asked him to 'develop some basis for stopping' defendant. The deputy agreed he 'basically us[ed] the inventory search as the means to go look for whatever narcotics-related evidence might be in the [vehicle].' [Citations.]" (*Id*. at pp. 789-790.) The appellate court also rejected the officer's testimony suggesting the vehicle was impounded because the defendant was an unlicensed driver. (*People v. Torres*, *supra*, at p. 790.)

In *People v. Williams*, *supra*, 145 Cal.App.4th 756, the defendant was stopped for failing to wear a seatbelt while driving a vehicle. He stopped the vehicle at the curb in front of his residence. The defendant had a valid driver's license, but did not have the registration or proof of insurance for the vehicle since it was a rental. The vehicle was validly registered to the rental car company and had not been reported stolen. The officer discovered there was an active arrest warrant for the defendant, so he arrested him and impounded the vehicle. A loaded gun was found in the backseat during the inventory search that the defendant sought to suppress. (*Id.* at p. 759.)

At the suppression hearing, the officer explained he impounded the vehicle pursuant to Vehicle Code section 22651, subdivision (h)(1) because the defendant was being arrested. The officer admitted the vehicle was legally parked and that it could have been locked and left where it was instead of being impounded. The officer also admitted his department did not have a written policy about when a vehicle should be impounded, the decision being left to the individual officer. (*People v. Williams*, *supra*, 145 Cal.App.4th at pp. 759-760.)

The *Williams* court explained its conclusion that the impoundment in that case was unreasonable:

> "No community caretaking function was served by impounding appellant's car. The car was legally parked at the curb in front of appellant's home. The possibility that the vehicle would be stolen, broken into, or vandalized was no greater than if [the officer] had not stopped and arrested appellant as he returned home. In this regard, it is significant that other cars were parked on the street and that it was a residential area. The prosecution

made no showing that the car was blocking a driveway or crosswalk, or that it posed a hazard or impediment to other traffic. Because appellant had a valid driver's license and the car was properly registered, it was not necessary to impound it to prevent immediate and continued unlawful operation. [Citations.] No other justification that would further a community caretaking function was offered or supported by evidence. Indeed, [the officer] admitted he decided to impound the car simply because he was arresting appellant and almost always impounded the cars of drivers he arrested. The prosecution simply did not establish that impounding appellant's car served any community caretaking function. It therefore failed to establish the constitutional reasonableness of the seizure and subsequent inventory search." (*People v. Williams*, *supra*, 145 Cal.App.4th at pp. 762-763.)

First, unlike *People v. Torres*, there was no evidence Officer Blais had any investigatory motive when he impounded the vehicles driven by defendant and his sister. In fact, defendant has conceded this point. Second, unlike *People v. Williams*, defendant did not have a valid driver's license. Third, unlike both *Torres* and *Williams*, the vehicles were stopped on a highway and could not remain parked there. Furthermore, as explained above, Officer Blais was not required to release the rental car to defendant's wife. In any event, he had no information indicating defendant's wife had permission to operate the rental vehicle. Hence, had Officer Blais released the vehicle to defendant's wife to drive, such a release may not have prevented immediate and continued unlawful operation of the rental vehicle.

In sum, Officer Blais's decision to impound both vehicles was reasonable. Vehicle Code section 22651, subdivision (p) permits such an impoundment. Further, the evidence establishes Officer Blais did not impound the vehicles for investigatory purposes. Thus, the officer's decision to impound the vehicles was supported by his community caretaking function and was reasonable under all the circumstances presented. The trial court did not err in denying defendant's motion to suppress evidence.

## DISPOSITION

The judgment is affirmed.

11.