Filed 2/18/25  P. v. Watts CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DEONDRE ANTHONY WATTS,<br><br>Defendant and Appellant. | C099754<br><br>(Super. Ct. No. 22FE010594) |

A jury found defendant Deondre Anthony Watts guilty of two counts of being a felon in possession of a firearm after police discovered firearms during a search of his car.  On appeal, Watts contends that the trial court erred in denying his suppression motion because the search violated his constitutional rights.  He also effectively argues that the abstract of judgment incorrectly lists his restitution fine.  We will direct the trial court to amend the abstract of judgment to accurately reflect the restitution fine imposed and will otherwise affirm the judgment.

1

BACKGROUND

A jury found Watts guilty of two counts of being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1))[1] based on evidence that officers discovered a semiautomatic firearm and a revolver during a traffic stop. Before trial, Watts moved to suppress this evidence under section 1538.5. In his motion, Watts argued that the search of his car was illegal because it was conducted without a warrant. Watts explained that "[u]nder the pretext of an inventory search, the officers illegally searched [him] for the purpose of gathering evidence to use against [him] in a criminal case." He also noted that "[t]he decision to impound [his] vehicle must be justified by a community caretaking function 'other than suspicion of evidence of criminal activity' because inventory searches are conducted in the absence of probable cause."

At the suppression hearing, Officer Reynaldo Garcia-Barron testified that on June 26, 2022, he observed a silver sedan driving 90 to 95 miles per hour in an area where the speed limit was 65 miles per hour. Officer Garcia-Barron activated his lights and siren and the sedan pulled over. The sedan remained partially in the driving lane when it stopped and thus was obstructing other vehicles on the roadway. Officer Garcia-Barron identified Watts as the sedan's driver. After the officer smelled alcohol and observed Watts's red and watery eyes, he directed him out of the car and patted him down for weapons. Watts answered some of Officer Garcia-Barron's questions but was unwilling to submit to field sobriety tests. Officer Garcia-Barron arrested Watts under suspicion of driving under the influence. Officer Garcia-Barron could not recall how long the stop lasted.

Officer Garcia-Barron testified that he proceeded to have Watts's car towed because it was blocking the roadway and he did not want to leave the car to be

---

[1] Undesignated statutory references are to the Penal Code.

vandalized, as it "wasn't a safe area." Before the car was towed, Officer Jonathan Velasquez conducted an inventory search, during which a firearm was discovered. On cross-examination, defense counsel asked Officer Garcia-Barron the following questions:

"[Defense counsel:] Is there a specific [California Highway Patrol] policy regarding inventory searches?

"[Officer Garcia-Barron:] In regards to what?

"[Defense counsel:] How to conduct it.

"[Officer Garcia-Barron:] Yes, you fill out a CHP-180.

"[Defense counsel:] Okay. And did you fill that out in this case?

"[Officer Garcia-Barron:] I did not.

"[Defense counsel:] Did Officer Velasquez?

"[Officer Garcia-Barron:] I don't know which officer did but I—Officer Velasquez started it, yes."

Officer Velasquez testified that it was necessary to conduct an inventory search here "[t]o notate all the belongings—the valuable belongings. So that when the vehicle goes to the tow yard, it's all notated." He estimated that he conducts anywhere between one and 10 inventory searches a night. On cross-examination, defense counsel asked the following questions:

"[Defense counsel:] Is that a specific [California Highway Patrol] policy on inventory searches?

"[Officer Velasquez:] [There] is a policy on inventory, yes, I would assume.

"[Defense counsel:] Can you tell me about it?

"[Officer Velasquez:] In regards that's a very expansive policy I mean . . .

"[Defense counsel:] I'll narrow it down a bit. Are you supposed to inventory search every vehicle that you encounter?

"[Officer Velasquez:] Yes, absolutely.

"[Defense counsel:] And that is part of the official department policy?

3

"[Officer Velasquez:] Yes."

Defense counsel argued at the hearing that "it's evident that this was a[] pretense search [as] the officers had everything they needed in terms of probable cause to arrest Mr. Watts for DUI. They immediately searched him for weapons and then under the color of—of an inventory search they searched his vehicle right there on the street for evidence of a crime. [¶] And it's apparent from their testimony that they were absolutely searching for evidence of a crime. And that was their true motivation for the search. They could have impounded the vehicle and completed the inventory search at the tow yard. [¶] Further they're—this was a prolonged detention for the purpose of searching for evidence of a crime. The officer refused to give or claimed that he couldn't recall the length of the detention. [¶] So we should assume that he prolonged the detention for the purpose of conducting this illegal search under the guise and pretext that it was, in fact, an inventory search, when it's very clear that it was a search for evidence of a crime . . . ."

The court denied Watts's motion to suppress the evidence, explaining: "I found Officer Garcia and Officer Velasquez to be credible in their testimony. It sounds like the investigation is a typical DUI investigation. In this particular case Officer Garcia was clear that the totality of the circumstances led him to place Mr. Watts under arrest for suspicion of driving under the influence. . . . [¶] . . . And then the car was ultimately towed and an inventory search was done. [¶] So I am not—from the testimony I heard, I didn't see any clear evidence of a pretext stop or a pretext search or anything like that."

The trial court sentenced Watts to the middle term of two years for one possession conviction and one-third of the middle term, eight months, for the other possession conviction. The court imposed "all mandatory minimum fines and fees." The abstract of judgment lists Watts's restitution fine under section 1202.4, subdivision (b), as $600. Watts timely appealed in October 2023. After delays in preparation of the record and

multiple requests by both parties to extend the briefing schedule, this case became fully briefed on December 19, 2024.

DISCUSSION

*Motion to Suppress*

Watts argues the trial court erred in denying the motion to suppress because the evidence established that the police conducted an investigatory search, not an inventory search. More specifically, Watts contends that: (1) the officers' testimony was insufficient to establish that an inventory search was conducted pursuant to standard policies and protocols; (2) the People failed to meet their burden of proving the actual existence of a standard policy on inventory searches; (3) there was no evidence that a standard inventory form was completed; and (4) Officer Velasquez's testimony indicates he incorrectly believed he was entitled to conduct an inventory search on any vehicle.

" 'The Fourth Amendment to the federal Constitution prohibits unreasonable searches and seizures.' " (*People v. Fayed* (2020) 9 Cal.5th 147, 182, italics omitted.) Absent a search warrant, "a search is reasonable only if it falls within a specific exception to the warrant requirement." (*Riley v. California* (2014) 573 U.S. 373, 382.) One such exception is for inventory searches of police-impounded cars. (*Blakes v. Superior Court* (2021) 72 Cal.App.5th 904, 913.) The U.S. Supreme Court has recognized that police officers have a legitimate interest in taking an inventory of the contents of vehicles they legally impound "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." (*Colorado v. Bertine* (1987) 479 U.S. 367, 372.) "To determine whether a warrantless search is properly characterized as an inventory search, 'we focus on the purpose of the impound rather than the purpose of the inventory.' " (*People v. Lee* (2019) 40 Cal.App.5th 853, 867.) " '[A]n inventory search conducted pursuant to an unreasonable impound is itself unreasonable.' " (*People v. Torres* (2010) 188 Cal.App.4th 775, 786.) "The decision to impound the vehicle must be justified by a

community caretaking function 'other than suspicion of evidence of criminal activity.' " (*Id*. at p. 787.)

A defendant may move to suppress evidence on the ground that "[t]he search or seizure without a warrant was unreasonable." (§ 1538.5, subd. (a)(1)(A).) "[W]hen defendants move to suppress evidence, they must set forth the factual and legal bases for the motion, but they satisfy that obligation, at least in the first instance, by making a prima facie showing that the police acted without a warrant. The prosecution then has the burden of proving some justification for the warrantless search or seizure, after which, defendants can respond by pointing out any inadequacies in that justification. [Citation.] Defendants who do not give the prosecution sufficient notice of these inadequacies cannot raise the issue on appeal." (*People v. Williams* (1999) 20 Cal.4th 119, 136.) "The prosecution retains the burden of proving that the warrantless search or seizure was reasonable under the circumstances. [Citations.] But, if defendants detect a critical gap in the prosecution's proof or a flaw in its legal analysis, they must object on that basis to admission of the evidence or risk forfeiting the issue on appeal." (*Id*. at p. 130.) "The degree of specificity that is appropriate will depend on the legal issue the defendant is raising and the surrounding circumstances." (*Id*. at pp. 130-131.) "Defendants cannot, however, lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*Id*. at p. 131.)

In reviewing the denial of a motion to suppress, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

The People argue that Watts has forfeited his current arguments by failing to raise them below. Watts offers no response in his reply brief to the People's forfeiture argument. We agree with the People. In his written motion in the trial court, Watts

moved to suppress the evidence because it was obtained in a warrantless search. Watts explained that the inventory search was a pretext and that the decision to impound his vehicle had to be justified by a community caretaking function. At the suppression hearing, the People adduced evidence that the impound of Watts's vehicle was supported by a community caretaking function—specifically, to remove his car from the roadway and to protect the car from vandalism. Watts continued to assert that the search was investigatory, emphasizing that: (1) officers patted him down for weapons; (2) in his view, officers prolonged his detention to search for evidence of a crime; and (3) officers conducted the search before impounding the car, rather than after. At no point did Watts argue that the People failed to prove the search was conducted pursuant to a standardized policy or that such a policy even existed. Nor did he claim that the absence of a completed inventory form or Officer Velasquez's understanding of an inventory search suggested that the search was investigatory.

Had these points been raised, the People would have had the opportunity to rebut them. For instance, Watts now argues that this was not an inventory search because officers never completed an inventory form (CHP 180) of the car's contents. However, the record does not affirmatively establish this. Officer Garcia-Barron testified that he did not personally fill out the form but stated that Officer Velasquez "started it." Officer Velasquez was subsequently never asked whether he filled out the form. Based on this, Watts now contends that "[t]here was no inventory list put into evidence, nor was there any indication that officers ever filled one out," asserting that the officers' testimony was "ambiguous" on this point.

If Watts had argued below that the lack of a completed inventory form suggested that the search was for the purpose of obtaining evidence, any deficiencies in the record on this point could have been remedied. For these reasons, Watts cannot now raise these arguments on appeal.

*Restitution Fine*

The parties agree, as do we, that the $600 restitution fine listed on the abstract of judgment is incorrect. It is the oral pronouncement of judgment that governs (*People v. Mitchell* (2001) 26 Cal.4th 181, 185), and here the trial court orally imposed the minimum mandatory restitution fine, which is $300. (See § 1202.4, subd. (b)(1) ["If the person is convicted of a felony, the fine shall not be less than three hundred dollars ($300)"].) Accordingly, we direct the trial court to amend the abstract of judgment to reflect a restitution fine of $300 and a parole revocation fine in the same amount. (See § 1202.45, subd. (a) ["the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4"].)

## DISPOSITION

The judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting Watts's restitution fine as $300 under section 1202.4, subdivision (b), and the parole revocation fine as $300 under section 1202.45, subdivision (a). The court shall then forward the amended abstract to the Department of Corrections and Rehabilitation.

/s/
BOULWARE EURIE, J.

We concur:


/s/
EARL, P. J.


/s/
FEINBERG, J.

8