Filed 3/24/16  P. v. Chavez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C078834 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF132857) |
| v. | |
| SERGIO CHAVEZ, | |
| Defendant and Appellant. | |

Following the denial of his motion to suppress evidence pursuant to Penal Code section 1538.5,[1] a jury found defendant Sergio Chavez guilty of one count of assault with a semiautomatic firearm (§ 245, subd. (b)) and one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1)).  The jury also found that defendant personally used a firearm within the meaning of section 12022.5, subdivision (a).  In a bifurcated proceeding, the trial court found true the allegations that defendant had a prior strike conviction (§ 667, subds. (c), (e)(1)), a prior serious felony conviction (§ 667, subd. (a)),

---

[1] Undesignated statutory references are to the Penal Code.

1

and had served two prior prison terms (§ 667.5, subd. (b)).  The trial court sentenced defendant to 34 years in prison.

On appeal, defendant contends the trial court erred in denying his motion to suppress evidence.  Defendant further contends the trial court violated section 654 by imposing a concurrent sentence for the unlawful possession of a firearm offense.  We disagree and shall affirm.

## I.  BACKGROUND

The facts are taken from the evidence presented at the hearing on defendant's motion to suppress.  Around 8:20 p.m. on July 21, 2013, a single shot from a gun was fired inside an apartment on East 8th Street in Davis.[2]  Prior to the shooting, the female victim saw her ex-boyfriend, defendant, and defendant's girlfriend get out of a white "Camry or Civic" near her apartment.[3]  From her apartment, the victim yelled across the parking lot at her ex-boyfriend, telling him to come get his "shit."  The ex-boyfriend did not respond.  However, defendant and his girlfriend yelled back at the victim, accusing her of various things, including breaking the ex-boyfriend's heart, and being a cheater and a liar.

Eventually, defendant and his girlfriend approached the victim as she was standing in the doorway of her apartment.  The victim tried to shut the door but defendant and his girlfriend prevented her from doing so.  When defendant stepped inside her apartment, the victim retrieved a box cutter and told defendant to leave.  In response, defendant asked the victim if she "wanted to play like that."  He then pulled out a handgun and pressed the barrel against her forehead.  The victim pushed the gun away from her several

---

[2] The bullet and the bullet casing found at the victim's apartment were consistent with a bullet fired from a semiautomatic nine-millimeter firearm.

[3] Defendant was driving the car.  His girlfriend was the registered owner of the car.  For purposes of this appeal, we will refer to the car as defendant's car.

times before defendant fired a shot past her head. The victim dropped to the floor, holding her ear and head. A few seconds later, she got up and saw defendant and his girlfriend in the parking lot. The victim then called the police.

Around 10:10 p.m., Lieutenant Glenn Glasgow of the Davis Police Department received a phone call about the shooting. He was advised of the circumstances surrounding the shooting and was given the name, date of birth, and a photograph of defendant. He then drove to Woodland to conduct surveillance on a car that matched the description provided by the victim. The car, a 1998 Toyota Corolla, was parked near defendant's residence.

Around 7:30 a.m. the next morning, Lieutenant Glasgow saw defendant drive away in the car. Shortly thereafter, a traffic stop was conducted and defendant was removed from the car. Defendant was taken into custody after Lieutenant Glasgow recognized him as the individual identified by the victim. A search of defendant's car revealed, among other things, a cell phone and a brown leather waistband holster. The cell phone was located in the center console near the emergency brake and gear selector, and the holster was found on the right, rear passenger floorboard. Following the search, defendant's car was towed due to a concern it might be burglarized because it contained numerous tools in the backseat. Prior to the car being towed, Lieutenant Glasgow conducted an inventory of the items in the passenger compartment.

Defendant was charged with, among other things, one count of assault with a firearm (§ 245, subd. (a)) and one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1)). Prior to trial, defendant filed a motion to suppress the evidence found in his car. In denying the motion, the trial court found the police had probable cause to stop and arrest defendant. The trial court also found the search of defendant's car was justified as a search incident to arrest because the police had a reasonable basis to believe that evidence relating to the assault with a firearm offense would be located in the

3

car.  The trial court further determined that the search of defendant's car was justified as a proper inventory search.[4]

Following a jury trial, defendant was convicted of one count of assault with a semiautomatic firearm (§ 245, subd. (b)) and one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1)).[5]  He was sentenced to 34 years in prison.  Defendant filed a timely notice of appeal.

## II.  DISCUSSION

### A.  *Motion to Suppress*

"Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1118.)  "In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence.  [Citation.]  We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment." (*Id.,* at p. 1119.)

"The Fourth Amendment to the federal Constitution guarantees against unreasonable searches and seizures by law enforcement and other government officials." (*People v. Parson* (2008) 44 Cal.4th 332, 345.)  Warrantless searches are presumed to be unreasonable, " 'subject only to a few specifically established and well-delineated exceptions.' " (*People v. Diaz* (2011) 51 Cal.4th 84, 90.)  The prosecution bears the

---

[4]  Shortly before trial commenced, the trial court denied defendant's renewed motion to suppress evidence.

[5]  Prior to trial, a second amended information was filed charging defendant with, among other things, one count of assault with a semiautomatic firearm (§ 245, subd. (b)) and one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1)).

4

burden of demonstrating a legal justification for a warrantless search. (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

  1. *Search Incident to Arrest*

  Defendant contends that the search of his car was unlawful because it was not reasonable for officers to believe that evidence related to his arrest for assault with a firearm might be located in the car. We disagree.

  Among the exceptions to the warrant requirement is a search incident to a lawful arrest. (See *United States v. Robinson* (1973) 414 U.S. 218, 224.) An automobile search incident to a recent occupant's arrest is constitutional if: (1) the arrestee is within reaching distance of the passenger compartment at the time of the search; or (2) the police have reason to believe that the vehicle contains evidence of the offense of arrest. (*Arizona v. Gant* (2009) 556 U.S. 332, 343, 351.) Where neither justification is present, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." (*Id.* at p. 351.)

  We conclude defendant's car was properly searched incident to his arrest because there was a reasonable basis to believe it contained evidence related to defendant's arrest for assault with a firearm. The victim of the shooting identified defendant as the shooter and provided a description of the car he was driving on the night of the shooting. Shortly after the shooting occurred, the police located a car matching the description provided by the victim. The police conducted surveillance on the car, which was parked near defendant's residence. Approximately 12 hours after the shooting, Lieutenant Glasgow saw defendant in the car, driving away from where it had been located. A traffic stop was conducted and defendant was removed from the car. During the stop and prior to the search, Lieutenant Glasgow recognized defendant as the individual identified by the victim as the shooter. Given these facts, the police had reasonable grounds to believe incriminating evidence would be found in the car relating to defendant's arrest for assault with a firearm. Accordingly, the warrantless search of defendant's car was a valid search

5

incident to arrest. (*Arizona v. Gant, supra*, 556 U.S. at pp. 343, 351.) Therefore, the trial court did not err in denying the motion to suppress evidence.

2.      *Inventory Search*

Defendant contends that the search of his car was an improper inventory search because there was no valid justification for impounding his car. We disagree.

Inventory searches of police-impounded cars are "a well-defined exception to the warrant requirement of the Fourth Amendment." (*Colorado v. Bertine* (1987) 479 U.S. 367, 371.) The Supreme Court has recognized that police officers have a legitimate interest in taking an inventory of the contents of vehicles they legally impound "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." (*Id*. at p. 372.) Nonetheless, it is well established that an inventory search must not be a "ruse for a general rummaging in order to discover incriminating evidence." (*People v. Williams* (1999) 20 Cal.4th 119, 126 (*Williams*).)

" '[A]n inventory search conducted pursuant to an unreasonable impound is itself unreasonable.' [Citation.]" (*People v. Torres* (2010) 188 Cal.App.4th 775, 786 (*Torres*).) "The decision to impound the vehicle must be justified by a community caretaking function 'other than suspicion of evidence of criminal activity' [citation] because inventory searches are 'conducted in the absence of probable cause' [citation]." (*Id.* at p. 787.) "Whether 'impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft.' [Citation.]" (*People v. Williams* (2006) 145 Cal.App.4th 756, 761.)

"Police officers may exercise discretion in determining whether impounding a vehicle serves their community caretaking function, 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.' [Citation.] Statutes authorizing impounding

6

under various circumstances 'may constitute a standardized policy guiding officers' discretion' [citation], though 'statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure' [citation]." (*Torres, supra,* 188 Cal.App.4th. at p. 787.)

An inventory search of an automobile lawfully impounded is valid if it is conducted pursuant to "standardized criteria" (*Colorado v. Bertine, supra*, 479 U.S. at pp. 374-375, fn. 6) or an "established routine," (*Florida v. Wells* (1990) 495 U.S. 1, 4) that is, if the police agency has a policy regarding conducting such searches and if the policy is followed in the particular case. (*Williams, supra,* 20 Cal.4th at p. 126.) The People bear the burden of proving that both the impoundment and search were constitutionally reasonable under all the circumstances. (*Id.,* at p. 130.)

We conclude the search of defendant's car was a lawful inventory search. Based on defendant's arrest, Lieutenant Glasgow had the authority under state law to impound his car. (Veh. Code, § 22651, subd. (h).)[6] Further, the record establishes that Lieutenant Glasgow's decision to impound the car served the community caretaking function of preventing the contents of the car from becoming a target of theft. The car contained numerous tools in plain sight and was located on Main Street in the City of Woodland. The record also establishes that defendant's car was inventoried pursuant to a standardized written Davis Police Department policy. There was no evidence demonstrating the impoundment was merely a ruse for conducting an improper investigatory search. Accordingly, the trial court did not err in denying the motion to suppress evidence.

---

[6] A peace officer may remove a vehicle "[w]hen an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody." (Veh. Code, § 22651, subd. (h)(1).)

7

*B.* *Section 654*

After imposing the sentence for the assault with a semiautomatic firearm offense, the trial court imposed a concurrent two-year sentence for the unlawful possession of a firearm offense. The trial court did not state any factual basis for its decision. However, implicit in its imposition of the concurrent sentence was a finding that defendant's possession of a firearm was a separate and distinct offense from the assault with a semiautomatic firearm offense. On appeal, defendant contends the trial court erred by failing to stay his sentence for the unlawful possession of a firearm offense. According to defendant, the trial court violated section 654 by not staying the sentence because both offenses were committed pursuant to the same criminal objective—"committing the assault." We disagree.

Section 654 prohibits multiple punishments for offenses arising from a single act or an indivisible course of conduct. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) It provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (§ 654, subd. (a).) "[T]he purpose of section 654 'is to insure that a defendant's punishment will be commensurate with his culpability.' " (*Latimer, supra,* at p. 1211.)

" ' "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." ' [Citation.]" (*People v. Capistrano* (2014) 59 Cal.4th 830, 885.) "If, on the other hand, in committing various criminal acts, the perpetrator acted with multiple criminal objectives that were independent of and not merely incidental to each other, then he may be punished for the

8

independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 196.)

" ' "The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support [the] finding the defendant formed a separate intent and objective for each offense for which he was sentenced." ' [Citation.]" (*People v. Capistrano, supra*, 59 Cal.4th at p. 886.) We review the trial court's determination regarding the applicability of section 654 for substantial evidence, and presume in support of the court's conclusion, the existence of every fact the court could reasonably have deduced from the evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*); see also *People v. Osband* (1996) 13 Cal.4th 622, 730 [approving substantial evidence standard of review].) When section 654 prohibits multiple punishments, the trial court must stay execution of sentence on the convictions that implicate multiple punishments. (*People v. Correa* (2012) 54 Cal.4th 331, 337.) The imposition of concurrent sentences is precluded by section 654 because under such a sentence, the defendant is deemed to be subjected to the term of both sentences although they are served simultaneously. (*People v. Duff* (2010) 50 Cal.4th 787, 796.)

We find no error in the trial court's imposition of a concurrent sentence for the unlawful possession of a firearm offense. Under section 654, "multiple punishment is improper where the evidence 'demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense.' " (*Jones, supra*, 103 Cal.App.4th at p. 1144; see *People v. Bradford* (1976) 17 Cal.3d 8, 22-23 [punishment for both assault with a deadly weapon upon a peace officer and possession of a firearm by an ex-felon was improper where the defendant wrestled away a peace officer's revolver and shot at the officer with it].) However, "multiple punishment is proper where the evidence shows that the defendant possessed the firearm

9

before the crime, with an independent intent." (*Jones, supra,* at p. 1144.)  In *Jones*, the court explained, "section 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary crime already in possession of the firearm." (*Id.,* at p. 1145; see *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1414 [Unlawful possession of a firearm by a felon "is complete once the intent to possess is perfected by possession. What the ex-felon does with the weapon later is another separate and distinct transaction undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed weapon"].)

Here, there is no evidence suggesting defendant fortuitously obtained possession of the gun at the instant of the shooting.  To the contrary, substantial evidence supports the conclusion that defendant possessed the gun used in the shooting prior to assaulting the victim.  At trial, there was evidence that defendant possessed a nine-millimeter before the assault.  Eight days prior to the shooting, defendant sent a text message to his sister stating:  "Yeah, I got two bucks in [my] wallet, but I got two 15-round mags in my nine-millimeter and a full tank of gas.  That means I can't go home 'till I come up."  There was also evidence that neither the victim nor her ex-boyfriend owned a gun.  Under these circumstances, the evidence supports a reasonable inference that defendant arrived at the victim's apartment with the gun.  As such, section 654 is inapplicable because defendant committed two separate acts within the meaning of the statute: arming himself with a gun, and shooting the gun at the victim's apartment. (*Jones, supra*, 103 Cal.App.4th at p. 1147.)  The evidence also supports an inference that defendant harbored separate intents in committing the two offenses.  (See *ibid.* [using the gun to shoot at a house required a second intent in addition to the defendant's original intent to possess the firearm].)  Accordingly, the trial court acted properly in not staying the sentence imposed for the felon in possession of a firearm offense.

## III.  DISPOSITION

The judgment is affirmed.



/S/

RENNER, J.


We concur:



/S/

HULL, Acting P. J.



/S/

HOCH, J.